STATE, RESPONDENT, *v.* VUCKOVICH, APPELLANT.

(No. 4,895.)

(Submitted October 29, 1921. Decided December 5, 1921.)

[203 Pac. 491.]

*Criminal Law—Homicide—Drawing of Jury—Alien Juryman —Information — Absence of Preliminary Examination — Exhibits—Experiments—Evidence—Admissibility.*

Homicide—Alien as Juror—Evidence—Insufficiency.

1. Evidence *held* sufficient to show that a foreign-born juror sitting in a capital case was a citizen of the United States at the time of the trial.

[61 Mont. 480.]

Same—Jury Trial—Extent of Right of Defendant.

2. A party litigant in neither a civil nor criminal case has a vested right to have his case passed upon by a jury taken from the panel drawn at any certain time, his rights in that respect being sufficiently protected if a fair and impartial jury was drawn at the time and in the manner recognized by law.

Same—Jury Panel—Drawing Jury—When Defendant may not Complain.

3. Where the trial court, instead of ordering a panel of regular jurors drawn in a number deemed by it sufficient for the term, had them drawn under three successive orders as occasion required, defendant was not in position to complain of the procedure followed, he not having been prejudiced thereby, and section 6348, Revised Codes of 1907, not limiting the number which may be drawn.

Same—Information—Filing Without Preliminary Examination.

4. The district court may grant leave to file an information without previous examination of defendant by a committing magistrate.

Same—Information—Verification by County Attorney—Effect.

5. Verification of an information by the county attorney is not a proper cause for setting it aside.

Same—Information—Surplusage.

6. An information charging murder in the first degree, otherwise sufficient, was not rendered insufficient by the absence of the words "a felony," after the words "murder in the first degree," hence the insertion of the two words by order of court upon complaint that the copy served upon defendant did not contain them did not render the information subject to a motion to quash.

Same—Evidence Showing Feeling Between Defendant and Accused Admissible.

7. Testimony of a police magistrate that defendant had on a certain day pleaded guilty to a charge of disturbing the peace by committing an assault upon deceased, and that of a police officer that he had advised defendant to keep away from the house of deceased to avoid trouble was admissible as showing the condition of feeling existing between the parties.

Same—Exhibits—Admissibility.

8. The bullet extracted from the body of deceased, whether secretly done or not, an empty pistol shell found at the scene of the homicide, a pistol and loaded shells taken from the person of the defendant, *etc.*, were properly admitted in evidence.

Same—Experiments Made Out of Court—Admissibility.

9. Evidence of experiments made out of court with a pistol and shells taken from the person of defendant was admissible within the discretion of the trial court, if it tended to corroborate the position taken by an expert witness, caution being exercised in receiving it.

Same—Evidence—Sufficiency.

10. Evidence *held* sufficient to warrant conviction of murder in the first degree.

---

4. Preliminary examination as prerequisite to filing of indictment or information, see note in **Ann.** Cas. 1916E, 312.

9. Admissibility of experiments as evidence, see notes in 53 **Am. St. Rep.** 375; 7 Ann. Cas. 216; **Ann. Cas.** 1912B, 296; 8 A. L. R. 18.

*Appeals from District Court, Missoula County; Theodore Lentz, Judge.*

Joe Vuckovich, convicted of murder in the first degree, appeals from the judgment and an order denying his motion for a new trial. Affirmed.

*Mr. James L. Wallace, Mr. Charles N. Madeen* and *Mr. Charles A. Russell,* for Appellant, submitted a brief; *Mr. Russel* argued the cause orally.

A long line of authorities resting upon reason and logic and not upon precedents which, as Justice Holmes, in *Brown* v. *United States,* 65 L. Ed. 619, says, "have had a tendency to ossify into specific rules without much regard for reason," holds that grounds of disqualification for which a juror might have been challenged, if unknown, and not to be discovered by reasonable diligence before verdict, may be urged as grounds for new trial. (*Hill* v. *People,* 16 Mich. 351; *Quinn* v. *Halbert,* 52 Vt. 353; *Mann* v. *Fairlee,* 44 Vt. 672; *Williams* v. *McGrade,* 18 Minn. 82; *Essex* v. *McPherson,* 64 Ill. 349; *Rice* v. *State,* 16 Ind. 298; *Guykowski* v. *People,* 1 Scam. (Ill.) 476.)

The presumption is that a person who was once a citizen of a foreign country, though residing in another, still remains a citizen of such foreign country. (*State* v. *Jackson,* 79 Vt. 504, 8 L. R. A. (n. s.) 1245, 65 Atl. 657.)

The defendant in a capital case waives nothing. Objection to alienage may be taken after verdict. (*Mann* v. *Town of Fairlee,* 44 Vt. 672.)

The district court in ordering a jury drawn while another jury was in attendance at the term undoubtedly believed that the innovation would be more conducive to the convenience of persons on the jury list. Clearly, the idea was that the first jury summoned would serve for a period of two weeks and then be discharged, and a new jury summoned while the old jury was in attendance would report and complete the

business of the court for that term. However that may be, it must be apparent from a consideration of the statutes and the decided cases that the court made a material departure from the recognized practice and from the lawful method of drawing and impaneling a jury. (*State* v. *McHatton,* 10 Mont. 370, 25 Pac. 1046; *Dupont* v. *McAdow,* 6 Mont. 226, 9 Pac. 925; *State* v. *McHatton,* 10 Mont. 370, 25 Pac. 1046; *State* v. *Landry,* 29 Mont. 218; 74 Pac. 418.)

The error in admitting testimony that defendant previously to the homicide had pleaded guilty to a charge in police court of disturbing the peace by slapping the decedent is clearly apparent. If true, it had no tendency to prove that he later murdered her.

The court erred in overruling defendant's demurrers and erred in overruling defendant's motions for bills of particulars. A bill of particulars does not remedy the defect of an indictment which fails to set forth the essential elements, the material facts that are claimed to constitute the alleged offense. (*United States* v. *Tubbs,* 94 Fed. 356, 360; *Floren* v. *United States,* 186 Fed. 961, 108 C. C. A. 577; *United States* v. *Cruikshank,* 92 U. S. 542, 558, 23 L. Ed. 588 [see, also, Rose's U. S. Notes].)

Evidence of experiments should be received with the greatest caution, so that the jury should not be confused or misled. (*State* v. *Boss,* 251 Mo. 107, 157 S. W. 782; *Harris* v. *State,* 62 Tex. Cr. 235, 137 S. W. 373.)

*Mr. Wellington D. Rankin,* Attorney General, and *Mr. L. A. Foot,* Assistant Attorney General, submitted a brief; *Mr. Foot* argued the cause orally.

The competency of a juror will be presumed until the contrary is shown, and it is incumbent upon the appellant to show the alienage of the juror by evidence that will overcome the presumption. (*State* v. *Mott,* 29 Mont. 292–307, 74 Pac. 728; *Hammond* v. *Noble,* 57 Vt. 193; *Richards* v. *Moore,* 60 Vt. 449, 15 Atl. 119; *State* v. *Weaver,* 58 S. C. 106, 36

S. E. 499; *San Antonio etc. Ry. Co.* v. *Lester* (Tex. Civ.), 84 S. W. 401.) While alienage is generally a disqualification to act as a juror, it has been held that an objection to a juror on that ground is too late when made after the verdict is rendered. (*Territory* v. *Harding*, 6 Mont. 323, 12 Pac. 750; *Territory* v. *Hart*, 7 Mont. 489, 17 Pac. 718; *Territory* v. *Baker*, 4 N. M. 117, 13 Pac. 30; *State* v. *Quarrel*, 2 Bay (S. C.), 150, 1 Am. Dec. 637, and note.)

Defendant contends that the method he followed in the selection of the jury was a substantial and material departure from the authorized method of selecting a trial jury, and that his challenge to the panel should have been sustained. In 24 Cyc. 231 (b), we find a general rule as follows: "A special venire may be ordered where the defect of jurors is caused by a discharge by the court of the regular panel previously in attendance, provided the action of the court in discharging this panel and summoning another was in good faith and not for the purpose of evading a trial by the regular jury." (*State* v. *Lutz*, 85 W. Va. 330, 101 S. E. 434; *Simmons* v. *Cunningham*, 4 Idaho, 426, 39 Pac. 1109; *Ohio & M. Ry. Co.* v. *Trapp*, 4 Ind. App. 69, 30 N. E. 812; *Hunt* v. *Scobie*, 45 Ky. 469; *State* v. *McCartey*, 17 Minn. 76; *Bennett* v. *Tintic Iron Co.*, 9 Utah, 291, 34 Pac. 61.) It is presumed that the trial court acted within its jurisdiction and excused the first jurors drawn for proper cause, as it is always a presumption that an official acts according to the law (*State* v. *Bowser*, 21 Mont. 133, 53 Pac. 179), and the burden of showing that such act was unlawful and not within the court's judicial discretion was upon the appellant, and this he has failed to do. (*State* v. *Bowser*, *supra*; *State* v. *Jones*, 32 Mont. 442, 80 Pac. 1095.) The court had full power to summon a venire of additional jurors in advance of the time needed and in anticipation of the exhaustion of the regular panel. (24 Cyc. 234; *Lambright* v. *State*, 34 Fla. 564, 16 South. 582; *O'Connor* v. *State*, 9 Fla. 215; *In re Foster*, 13 Abb. Pr. (n. s.) (N. Y.) 372.) It has even been held that

a challenge to the array is waived by a challenge to the polls (16 R. C. L., sec. 56, p. 239; *Pierson* v. *People,* 79 N. Y. 424, 35 Am. Rep. 524), and that is the situation in the instant case.

There was no error in admitting testimony that appellant prior to the homicide had pleaded guilty to an assault on the deceased. (13 R. C. L. 912; 21 Cyc. 915.) In the case of *People* v. *Colvin,* 118 Cal. 349, 50 Pac. 539, it was held that the general nature of any trouble between the defendant and the deceased before the homicide might properly be shown, even if such evidence did tend to degrade the defendant in the minds of the jury. (See, also, *People* v. *Kern,* 61 Cal. 244; *Kelly* v. *State,* 49 Ga. 12; *Crass* v. *State,* 31 Tex. Cr. Rep. 312, 20 S. W. 579; *State* v. *Shafer,* 26 Mont. 11, 66 Pac. 463.)

MR. CHIEF COMMISSIONER POORMAN prepared the opinion for the court.

The defendant was informed against, tried and convicted of the crime of murder in the first degree. From the judgment entered on the verdict and an order overruling his motion for a new trial defendant has appealed.

I. The defendant claims that "the judgment and verdict [1] are nullities because an alien sat upon the jury." In support of this contention the defendant presented records and affivadits that the father of the juror Jacob Barer was not a citizen of the United States until the fourth day of June, 1913, when he was duly naturalized as a citizen of the United States, and that he formerly resided in Winnipeg, Province of Manitoba, Canada. An affidavit was also presented and filed by the juror to the effect that he was born at the city of Winnipeg, Province of Manitoba, Dominion of Canada, on the seventeenth day of March in the year 1892. It is also made to appear by affidavit of one of defendant's attorneys that in response to a letter written by him, he "received from the provincial board of health, vital statistics

branch, of Manitoba, a letter with reference to the birth of said Jacob Barer, together with certificate of birth." The letter received was signed by E. N. Wood as secretary, and stated:

"I am unable to trace a registration of the birth of Jacob Barer, 17 March 1892. The following record No. 215 for the year 1892, appears in the records of this department: 25 Feb. 1892. I, Coppel Borer, at Fonseca St., Winnipeg, Father Isak Borer (Pedlar) Mother, Mali Weisman."

A certificate of birth was also presented, as follows:

"Provincial Board of Health [Seal] Manitoba.
"Certificate of Birth

"On the 25th day of February, 1892, at Fonseca St., Winnipeg, in the province of Manitoba, Canada, there occurred the birth of J. Coppel Borer. Name of father, Isak Borer. Occupation, pedlar. Residence, Winnipeg, Man. Birthplace, not given. Maiden name of mother Mali Weisman.

"This birth is certified to be registered as No. 215 for the year 1892 in the register of the registration division of city of Winnipeg, now on record in the archives of the provincial board of health.

"Given under my hand and seal of the board 16th day of April, 1921.

"[Seal.]                                    E. N. WOOD.
"Secretary of the Board."

This is all of the evidence presented by the defendant to sustain his contention that the juror Jacob Barer was not a citizen of the United States, except that other affidavits were filed which purport to contain statements made by Jacob Barer relative to the time and place of his birth. To combat these affidavits the respondent filed the affidavit of said juror Jacob Barer, which is to the effect that he did not know his age, stating that he had heard that he was born on the 17th of March, 1892, and had heard that he was born on the 17th of March, 1893, and that he did not know in which year his birth occurred; that he recalled distinctly that at the time

his father received his final naturalization papers in Walla Walla, Washington, he was under twenty-one years of age; that he and his father talked the matter over, and knew by reason of being under twenty-one years of age he became a citizen of the United States. The affidavit of the father, Isaac Barer, was also filed, and is to the effect that he knew the juror Jacob Barer was born in Winnipeg, Manitoba, on the seventeenth day of March, 1893, and he also refers to the incident of securing his final naturalization papers and to the discussion he then had with his son relative to his son becoming a citizen, and he was then under twenty-one years of age. It appears that Isaac Barer and his wife, the mother of the juror, had not lived together for a period of twenty years, the mother then residing in Los Angeles, California. She also made and filed an affidavit to the effect that her son, Jacob Barer, was born on March 17, 1893, at Winnipeg, Canada. This is all the evidence relating to the citizenship of the juror Jacob Barer. The court found that he was a citizen of the United States, and, in view of the fact that there is not any evidence showing that "I. Coppel Barer," or "J. Coppel Borer," and Jacob Barer is the same person, there is not any evidence that the juror was not a citizen except his own affidavit, which he later explains. It is unnecessary to enter upon any discussion of the law when it affirmatively appears from the facts that the juror was a citizen of the United States at the time he was called.

II. Appellant claims that the jury which tried the defend- [2, 3] ant was not lawfully summoned and impaneled, and that therefore the verdict was illegal and void for the reason that the jury was summoned at a time when the court had already another jury in attendance, which jury was summoned for the term at which defendant was tried, but not permitted to try him. It appears from the record that on January 24, 1921, an order was made by the court that the names of fifty persons be drawn from jury-box No. 1 to serve as trial jurors for the January, 1921, term, department

2, to appear in court Monday, February 14, 1921; that the jurors appeared on February 14, 1921, and on that day the court made the following order: "And it appearing to the court that for good cause shown the jurors now in attendance will need to be finally excused at the end of two weeks, it is ordered that the names of fifty persons be drawn from jury-box No. 1 to serve as regular trial jurors for the January, 1921, term, department No. 2, to appear in court Tuesday, March 1, 1921. * * * " The jury originally drawn was finally discharged on February 23, 1921. On March 11, 1921, the following order was made by the court: "It appearing to the court that there is an insufficient number of trial jurors in attendance, it is ordered that the names of fifty persons be drawn from jury-box No. 1 to serve as regular trial jurors for the January, 1921, term, department 2, to appear in court Monday March 21, 1921. * * * " On said March 11, 1921, in the trial of a civil action, the jury panel became exhausted, and it was necessary to draw a special panel from jury-box No. 3 in order to complete the panel in that case.

This case was set for trial on March 21, 1921, and came on for trial on that day. During the progress of the trial it became necessary to draw a special jury from box No. 3, and, later on, during the trial, it became necessary to draw another special jury from box No. 3. It further appears that at the time the special venires were issued in the instant case the panel in attendance was exhausted. The appellant does not contend that the court abused its discretion in the finding made that it was necessary to discharge the original panel at the end of two weeks' service, or in the order of the court discharging such panel on the twenty-third day of February, 1921. The contention seems to be based wholly on the ground that at the time it made the order, on the 14th of February, for the fifty additional jurors, there was already a jury in attendance, and that the court could not lawfully make the order for the second drawing. A hundred and fifty regular

jurors were drawn under the orders made January 24, February. 14, and March 11. The statute (sec. 6348) does not limit the court as to the number of jurors it may draw; hence it was in the power of the court on January 24 to have caused to be issued a venire for the entire 150 jurors, and to have placed them on the payroll of the county when it was known that they would not be needed in the discharge of the duties then before the court. Had this been done the appellant could not complain. How, then, could he be prejudiced by the fact that they were drawn under successive orders, instead of under one order? It appears from the evidence that the crime with which the defendant was charged was alleged to have been committed in the city of Missoula, where the court was held. The court evidently endeavored to secure a jury from the body of the county, instead of making the selection from those who resided in the city wherein it is claimed the crime was committed. The statute does not, in express terms, nor do we think by implication, convey the meaning or impression that the power of a court is exhausted when it has drawn the first jury. If that is its meaning, then the court would be powerless if, for any reason, it became necessary to excuse all the jurors obtained from the original venire, unless a special jury was drawn from box No. 3 for each case tried. The purpose of drawing a jury at all is to enable the court to proceed with the trial of cases. The phrase, "and no jury is in attendance," appearing in the section, means a sufficient number of jurors to transact the business of the court, and if that phrase were not in there at all it would not be presumed that a court would have two independent juries in attendance at the same time. The special juries called were drawn under authority of sections 6357 and 6738, Revised Codes, after the panel then in attendance had been exhausted. A party litigant in neither a civil nor criminal case has any vested right to have his case passed upon by a jury taken from the panel drawn at any certain time. All that he can demand is that

he have a fair and impartial jury, drawn at the time and in the manner recognized by law. When a jury is so drawn, the parties litigant cannot complain. (*State* v. *Byrd*, 41 Mont. 585, 111 Pac. 407.) As further elucidating these questions, we cite here *People* v. *Jackson*, 111 N. Y. 362, 19 N. E. 54; 24 Cyc. 233.

III. The information was filed by leave of court upon this [4–6] application and affidavit of the county attorney and without a hearing before a magistrate; is correctly entitled as to court and cause; contains the name of defendant; was subscribed, verified, and presented to the court by the county attorney; and in its charging part is as follows: "That at the county of Missoula, state of Montana, on or about the twelfth day of February, A. D. 1921, and before the filing of this information, the said defendant then and there being, did then and there willfully, wrongfully, unlawfully, feloniously, deliberately, premeditatedly, and of his malice aforethought shoot, kill, and murder one Mrs. Jerry Shea, a human being. * * * "

Defendant moved to set aside the information for the reason that he had not been committed by a magistrate, and that not sufficient evidence had been presented to the court to warrant the court in granting leave to file the same. This motion was overruled. A demurrer was then interposed on the grounds that the information was not sufficiently specific, was verified, and did not state a public offense, which demurrer was overruled. A demand for a bill of particulars was then made, which was denied. It appears that the copy of the information delivered to the defendant at the time of his arraignment did not contain the words "a felony" after the phrase "of murder in the first degree," as appears in the information filed. On discovering this fact defendant again moved to quash the information for the reason that a true copy had not been given to him. The court ordered the words inserted in the copy, and overruled the motion. Thereupon defendant again successively moved to quash, demurred, and

demanded a bill of particulars, all of which were overruled and denied.

The right of the court to grant leave to file an information without previous examination by a committing magistrate is settled law in this state. It is authorized by the Constitution (sec. 8, Art. III), granted by the statute (secs. 9105, 8929), and confirmed by numerous decisions of this court (*State* v. *Brett,* 16 Mont. 360, 40 Pac. 873; *State* v. *Spotted Hawk,* 22 Mont. 33, 55 Pac. 1026; *State* v. *Little Whirlwind,* 22 Mont. 425, 56 Pac. 820; *State* v. *Bowser,* 21 Mont. 133, 53 Pac. 179; *State* v. *Martin,* 29 Mont. 273, 74 Pac. 725).

The facts on which the court acts in granting leave must be satisfactory to the court "whatever may be the form or manner of their presentation." (*State* v. *Martin, supra.*) The county attorney is a constitutional officer (Art. VIII, sec. 19, Const.), acting under oath, vested with authority, and it is his duty to inquire into alleged violations of law, to institute criminal proceedings, and to represent the state in matters and proceedings in his county (sec. 3052, Rev. Codes), signs all informations (sec. 8921), and may make "application for leave to file an information before an examination, commitment, or admission to bail" (sec. 8928), and when the application, as in this case, is accompanied by an affidavit and the court is satisfied with the report thus made, it may act thereon and grant such leave, although it may require additional information if it so desires. The complaint that the information was verified is without merit. Formerly it was contended that an information must be verified. (*State ex rel. Nolan* v. *Brantly,* 20 Mont. 173, 50 Pac. 410; *State* v. *Shafer,* 26 Mont. 11, 66 Pac. 463.)

IV. The words "a felony" were surplusage, and might as well have been stricken from the information. The information states all that is required to be stated by the provisions of sections 9156 and 9157, including the manner in which the offense is alleged to have been committed. (*State* v. *Stickney,* 29 Mont. 523, 75 Pac. 201; *State* v. *Crean,* 43 Mont. 47, Ann.

Cas. 1912C, 424, 114 Pac. 603; *State* v. *Hliboka,* 31 Mont. 455,
3 Ann. Cas. 934, 78 Pac. 965.) The court did not commit
any error in overruling the various motions, demurrers, and
demands.

V. During the trial the state called the police magistrate,
[7] evidently for the purpose of showing that the defend-
ant had, on the twenty-sixth day of January, 1921 pleaded
guilty to a charge of disturbing the peace by committing an
assault on the deceased, Mrs. Shea. Objection was made to
this evidence on the ground that it was incompetent, irrelevant
and immaterial. The previous witness had testified as to diffi-
culty between Mrs. Shea and the defendant on the 25th of
January, 1921, about twelve days prior to the homicide. The
witness, without objection, also testified as to the details of
the assault, stating that the defendant went into the house
of Mrs. Shea, brought her and the children out on the porch
where he "slapped her, put his thumb in her mouth, rammed
her back against a post of the porch," took up the children
and with an oath commanded Mrs. Shea to follow him. It
was evidently the intention of the state to corroborate the tes-
timony of this previous witness by that of the police magis-
trate. A lengthy discussion followed by the counsel, and it
was finally stipulated that the defendant did, on the twenty-
sixth day of January, 1921, enter a plea of guilty to a charge
of disturbing the peace by slapping Mrs. Shea. The judgment
in the case wherein defendant was accused of disturbing the
peace was not offered in evidence, neither was the complaint
filed against him, but the prosecution did put in evidence
the fact that the defendant pleaded guilty to a charge which
included the slapping of Mrs. Shea. The only purpose of such
evidence is to show the condition of feeling theretofore exist-
ing between the defendant and the deceased, and to this
extent the evidence was pertinent and material, and, even if
it be conceded that Mrs. Shea was the aggressor at the time
of this trouble, the circumstance would nevertheless tend to
show the state of feeling existing between them. The plea

of guilty entered by the defendant would be some evidence tending to show that he and the deceased had had trouble at that time, but the judgment, of course, could not be introduced for the purpose of showing him guilty of the offense of disturbing the peace; neither would the plea of guilty made by the defendant be conclusive upon him in the trial of the instant case. (Jones on Evidence, 2d ed., sec. 589, p. 734; *Doyle* v. *Gore,* 15 Mont. 212, 38 Pac. 939.)

It has been held by this and other courts that for the purpose of enabling the jury "to inquire what the motive or impulse was which prompted the defendant" to commit the act complained of, evidence of the condition of feeling existing between the deceased and the defendant is pertinent and material. (*State* v. *Shafer, supra;* 13 R. C. L., sec. 216, pp. 9–12; 21 Cyc. 915; *People* v. *Colvin,* 118 Cal. 349, 50 Pac. 539.)

The state also called as a witness the chief of police, and put in evidence a conversation had between him and the defendant on the thirty-first day of January, 1921, relative to a state of feeling existing between the defendant and the deceased. In the general conversation that followed, the chief of police advised the defendant not to go around the home of deceased, as it might get him into trouble. This evidence was also objected to; and, while it might well have been left out of the record entirely, it did tend to show that the condition of feeling existing between the parties, testified to by the former witnesses, continued to exist at that time. Independent statements made by the officer, and not a part of the conversation, would have been improper, but the evidence given was apparently a part of the general conversation, and falls under the same general head as that just discussed, and no reversible error was committed in permitting either it or the former testimony to be given in evidence.

VI. The bullet which caused the death of the deceased was [8, 9] extracted from her head and introduced in evidence.

The bullet was proved to be one from a 32-caliber Colt's automatic pistol. An empty 32-caliber automatic pistol shell was found at the scene of the homicide, and was also introduced in evidence. It had a peculiar crimp or mark at the open end. Loaded shells taken from the defendant at the time of his arrest and fired from the 32-caliber Colt's automatic pistol, which was also taken from the defendant at that time, showed the same peculiar crimp or mark as that appearing on the shell found at the scene of the homicide, while shells taken from the appellant and fired from another pistol of similar make and caliber did not have this peculiar mark upon them. The weight of the bullet taken from the body of the deceased proved to be of the same weight as those used in the pistol taken from the defendant. The rifling marks made by the lands and grooves in the barrel of the pistol were the same. The fact that the bullet taken from the body of the deceased may or may not have been removed secretly does not destroy its evidentiary value. Objection was made to the introduction of this evidence, especially as to the experiments made. It seems to be a well-established rule that it is largely within the discretion of the trial court to permit experiments to be made, and that caution should be exercised in receiving such evidence. It should be admitted only where it is obvious to the court from the nature of the experiments that the jury will be enlightened, rather than confused. Such evidence should not be excluded merely because it is not necessary in establishing the facts sought to be shown by the prosecution, if it tends to corroborate the position taken by the expert witness whose evidence has been received; for whenever the opinion of a person is admitted to be relevant the grounds on which it is based are also relevant. Evidence of experiments made out of court and not in the presence of the jury are admissible upon the same principle as the experiments which are conducted in the jury's presence. Under the circumstances of this case, we find no error in the admission

of this evidence. This matter may be found fully discussed, with a collection of authorities, in 10 R. C. L., p. 1000 *et seq.*, secs. 187–191. (*State* v. *Hurst*, 23 Mont. 484, 59 Pac. 911; Jones on Evidence, 2d ed., p. 508, sec. 403 *et seq.*)

VII. Appellant also complains of instructions Nos. 2, 3, 5, 7, 10, 11, 12, 14, 15, 16, 17, 20, 31, 32 and 33, given by the court. These instructions are stock instructions given in homicide cases, and are mostly copies of the statute. No useful purpose would be served by discussing them. It is sufficient to say that they are not open to any objection made to them, and that no error was committed in giving them.

Defendant's offered instruction No. D–6 was fully covered by instructions given, and his offered instruction, No. D–11, is erroneous from any standpoint under the facts in this case.

VIII. The principal ground on which the appellant asked [10] for a new trial is that the evidence is insufficient to warrant a conviction of murder in the first degree. The evidence introduced by the state tends to prove that the social relation between the defendant and the deceased had been very close. On January 25, 1921, trouble existed between the parties to the extent that defendant had slapped the deceased and had used profane language toward her. Between that time and January 31 other trouble had occurred. On February 7 defendant purchased a 32-caliber Colt's automatic pistol, and on February 11 he and the deceased were seen together and quarreling; defendant shaking his fist at her. On February 12 defendant made the threat with reference to the deceased "that he would get her," and applied to the deceased a vile name. The shooting occurred on the evening of February 12, between 7 and 8 o'clock. The defendant and the deceased were seen together at the place of the shooting, and within four minutes thereafter a shot was heard, and defendant was seen running away from that place. At about 4 o'clock on the morning of the 13th of February the defendant appeared at a neighbor's place, apparently much

·excited, and made the statements, "They have got me this time"; "they will give me life and hang me"; also stating that he had been bootlegging. On the sixteenth day of the same month defendant was apprehended and arrested on the Northern Pacific Railroad track about thirty-five miles east of Missoula and traveling east. A 32-Colt's automatic pistol was found in his possession, together with some ammunition therefor. When asked as to how he got there, he replied that he went across the hills. Later he stated that he shot the deceased. The evidence on the part of the defendant does not contradict many of these facts here stated, but is, to some extent, impeaching in character and does raise an issue as to some of the things which the state must necessarily prove. It also appears from the cross-examination of the state's witnesses, and part of the evidence introduced by the defense, that the deceased had received money from the defendant which she had not repaid, but this would not be a justification for the homicide. In certain particulars the facts in this case closely resemble those appearing in the case of *State* v. *Juhrey, ante,* p. 413, 202 Pac. 762. However, it is a general rule of law that "Threats and misconduct on the part of the deceased toward the defendant, occurring prior to the homicide, form of themselves no justification or excuse for the taking of human life." (*Smith* v. *State* (Okl. Cr. App.), 174 Pac. 1107.)

The evidence introduced by the state, we believe, is sufficient to sustain this verdict and, where it conflicted with the evidence of the defense, it raised a question for the jury to determine. We have not been able to discover any ground on which the defendant could properly be granted a new trial.

Defendant's specification No. 13, relating to the action of the court in denying his motion for continuance, has not been referred to herein, for the reason that the same is not discussed in appellant's brief. We have examined the record, however, and find that the court did not commit error in denying the motion.

We therefore recommend that the judgment and order be affirmed.

PER CURIAM: For the reasons given in the foregoing opinion the judgment and order are affirmed.

*Affirmed.*

Rehearing denied January 6, 1922.