THE STATE OF MONTANA, Plaintiff and Respondent, *v.*
BRUCE A. JOHNSON, Defendant and Appellant.

No. 11157.
Submitted January 13, 1967. Decided March 6, 1967.
424 P.2d 728.

174

John M. McCarvel, Great Falls, for appellant.

Charles F. Moses, Billings, Oscar Hendrickson (argued), Chinook, John Cavan (argued), Billings, for respondent.

MR. JUSTICE CASTLES delivered the Opinion of the Court.

This is an appeal from a judgment of conviction of five counts of grand larceny. The judgment sentenced the defendant to five years imprisonment on each count, and on the last two counts, the sentence of five years was to run concurrently with the sentence on the previous counts.

The wild west is not dead. The saga of cattle rustling, running irons, brands, dewlaps, wattles, ear marks, cowboys and even Indians giving rise to these facts might well have been written by Zane Grey, the western story author. A brief narrative of the facts testified to will be made before setting forth significant procedural and other matters specified as error.

In the spring of 1964 one Robert Long, a neighbor rancher of the defendant, Bruce Johnson, saw the defendant bring in about 100 head of cattle belonging to Wellington D. Rankin.

Long was able to identify the animals by their general appearance and by dewlaps on their brisket. Dewlaps were explained as a strip of hide cut to hang free so that it produces a distinctive mark or identifying object. On May 6, he saw cows with a worked-over or altered brand described as a written E

bar Y to a reversed B bar K. He noticed more cattle showing up around the 8th or 10th of May with re-worked brands. He testified that he used field glass, 20 x 50 power.

In May or June, the ditch rider who passed through defendant's property regularly and was familiar with the Rankin brand, saw worked-over brands on the defendant's ranch. He estimated that he saw about twenty-five head of worked-over branded cattle. He saw one particular whiteface cow whose right hind foot had been frozen in a previous year. The same cow was seen again by the ditch rider in the Havre yards and is one of the cattle with which the defendant is charged as a separate count.

On August 4, 1964, Tom Little, a rancher, was in an area in what is designated as the Pauly place. He saw nine cows with the same worked-over brand. He contacted Ted McCrea, a State Livestock Inspector. McCrea, on the following day, "tracked" the cattle to the Pauly lease. An investigation disclosed that the Pauly lease was land being rented by defendant from Pauly. It consisted of both deeded land and Federal lands. Although defendant alone signed the agreement for rental with Pauly, Pauly understood that defendant's brother also was in the agreement. The Federal Agency involved had not approved the subleasing of its lands and were not aware of the cattle being on the premises. However, defendant testified that he had some kind of oral permission from the Coal Creek Grazing District, the state agency responsible for issuing grazing licenses for private lands.

In 1963 there was a dispersal sale of all of the defendant's cattle. The explanation given by the defendant for the presence of 162 cows on his property was that they were a herd developed from 10 head which the defendant had set aside in 1955. His alleged purpose was to create a herd to provide funds for his children's college education. None of these cattle appeared on tax assessment rolls, the defendant claiming that this was "unintentional" on his part. There is no doubt that the de-

fendant lawfully acquired the reverse B bar K brand. In 1964 he applied to the Montana Livestock Commission, Department of Marks and Brands for the 8 bar K brand, but was told that it was in conflict with the reverse B bar K owned by Arthur Bollinger of Jordan, Montana. Thereafter the defendant purchased the reverse B bar K brand from Mr. Bollinger, legitimizing the mark, if not the animals to which it was applied.

The Bureau of Land Management and Department of the Interior, operating through the Range Conservation Department, are responsible for issuing grazing permits on public lands. This agency also has the duty to check the forage on such property and investigate trespass. Glen Stickley is the Administrator of Public Lands and is employed by the Range Conservation Department. Stickley was informed that there were cattle upon the Pauly lease. Feeling that there was no authority for these cattle to be on the Pauly lease, Stickley, accompanied by Lawrence Johnston, an inspector for the State Livetock Commission, drove to the Pauly lease on September 2, 1964. The cattle were examined and photographed. Upon further inquiry, the defendant told Stickley that the cattle branded with the reverse B bar K belonged to him.

Johnston, having years of experience as an inspector of livestock brands, concluded that the cattle on the Pauly lease had altered brands. On September 4, 1964, Johnston obtained a search warrant from Judge Lewis in Chinook directed to Sheriff John Garland. On September 5, 1964, the sheriff and others served the warrant on the defendant and took into custody 157 head from the Pauly place. Five more cows with worked-over brands were found at the defendant's home. Defendant was duly arrested and charged with five counts of grand larceny.

In his first specification of error, defendant alleges that the language of the information was not specific enough to inform him of the charge. A cursory examination of the information fails to support this allegation. We find it diffi-

cult to believe that the defendant was not adequately apprised of the charges upon which he was arrested.

The information was filed directly on leave of court as provided by section 94-4903, R.C.M.1947. Defendant contends that there is no record of a showing of probable cause before the magistrate who granted leave to file directly. In State v. Vuckovich, 61 Mont. 480, 491, 203 P. 491, 493, this court said:

"The right of the court to grant leave to file an information without previous examination by a committing magistrate is settled law in this state. It is authorized by the Constitution (section 8, art. 3), granted by the statute (sections 9105, 8929), and confirmed by numerous decisions of this court * * *."

■■ While leave to file an information directly, without a preliminary hearing, cannot be a perfunctory affair, the information in the hands of the prosecuting attorney in this case was overwhelming, as the subsequent trial revealed. The motion to file directly was supported by an affidavit and we can find no error or abuse of the statutory privilege to by-pass the preliminary hearing, particularly when such a hearing would clearly serve no purpose nor secure any advantage to the defendant.

The second general specification of error involves the search and seizure of the cattle. Article III, § 7, of the Constitution of Montana provides:

"The people shall be secure in their persons, papers, homes, and effects, from unreasonable searches and seizures, and no warrant to search any place or seize any person or thing shall issue without describing the place to be searched, or the person or thing to be seized, nor without probable cause, supported by oath or affirmation, reduced to writing."

■ Defendant would have us believe that the manner in which the search and arrest was made violated his rights under the laws and Constitution of Montana and of the United States. We find this charge to be without support. Lawrence Johnston, the livestock inspector, testified that he could discern the

worked-over brands before he actually entered the Pauly lease. Furthermore, it was his duty to conduct the type of investigation which occurred. The defendant placed the cattle on open range land where they could be seen by neighbors, ditch-riders, and others who were privileged to enter the property. The type of lease involved, at least with respect to public lands, was a mere license to graze cattle and did not confer exclusive rights of possession upon the defendant.

In several Montana decisions, including State v. Ladue, 73 Mont. 535, 237 P. 495, and State v. Arnold, 84 Mont. 348, 275 P. 757, this court has held that open pastures and farm lands are not the type of property which the Constitutions of Montana and the United States intended to protect from unreasonable search and seizure.

There is no evidence in the record that the search warrant issued was inadequate. Cattle removed from the vicinity of the defendant's home were taken with his consent. Under the rule of State ex rel. Muzzy v. Uotila, 71 Mont. 351, 229 P. 724, such consent served as a waiver of defendant's right to object to the evidence gained through the search. There is nothing before us to indicate that the sanctity and security of defendant's home or person was violated, and we cannot help but feel that the defendant is grasping after technicalities which have no basis in fact.

The defendant also contends that there was a systematic exclusion of Indians from the jury panel. The testimony of the defendant at trial clearly indicates that he was unfamiliar with those qualifications necessary to be a juror. The following excerpt is from the cross-examination of the defendant:

"Q. You didn't know what the qualifications were? A. No, only as of sound mind and body.

"Q. So the basis of your determination whether they qualified was whether they had real estate or were of sound mind and body and that is all? A. Right."

It also developed at trial that the defendant based

his charge on an examination of a tax assessment roll for 1965 rather than 1964. The State presented ample evidence of the manner in which the jury list was drawn up. Minor administrative deviations did occur but these fell far short of "systematic exclusion" of Indians. We might note in passing that the defendant is not of Indian extraction, and while this fact is not material in considering whether a representative jury was selected, it does underscore a clear lack of prejudice in the instant case.

The final specification of error concerns the manner in which five separate counts of grand larceny were set forth in the information. The five counts were established primarily in terms of manner of proof. One count was alleged for larceny of an old cow with a crippled rear hoof. The second count referred to 15 head, where the identity and the reworking of the brands was particularly pronounced. Count three included 5 head which were found at the Johnson home rather than the Pauly lease. The fourth count referred to the balance of the stolen animals with the exception of one animal contained in count five. This cow was owned jointly by Rankin and Arthur Acher, the difference in ownership being the basis of a separate count.

Section 94-6407.1, R.C.M.1947, permits an information to charge more than one offense in separate counts. In State v. Boe, 143 Mont. 141, 146, 388 P.2d 372, 375, this court said:

"The controlling word is offenses, it [section 18, Art. III, Mont.Const.] does not refer to acts, which, by statute, are made one or more separate offenses. The test of 'former jeopardy' is whether a verdict of either acquittal or conviction of one or more of the offenses could be imposed as a bar to a prosecution for any of the other offenses charged therein. In this case where the separate acts are set forth as required by statute, clearly each is a separate offense and acquittal or conviction on one or more counts does not affect any of the other."

While the Boe decision is factually distinguishable

from the case at hand, the citation above states a principle which we feel is applicable. Constitutional requirements of due process will be satisfied if each count in the information states a separate offense. We feel that this requirement is met here.

Section 94-2704, subd. (3), R.C.M.1947, provides:

"Grand larceny is larceny committed with a felonious intent in either of the following cases: * * *

"3. When the property taken is a stallion, mare, gelding, colt, foal, or filly, cow, steer, bull, stag, heifer, calf, mule, jack, jenny, goat, sheep, or hog."

One clear purpose of this section is to render the theft of such animals grand larceny without reference to the value of the animal. We also feel that this section makes the theft of each separate animal a separate and distinct offense.

It is obvious that a criminal offense is not *defined* in terms of the case with which it can be proven at trial. It is also true that ownership of the property of itself does not determine whether an offense has been committed. In State v. Akers, 106 Mont. 43, 74 P.2d 1138, this court has said that while the fraud may be against the owner, the crime is against the state, and that while ownership must be alleged "the allegation does not give character to the act, but is merely a matter of description." But since we have concluded that the larceny of each cow is a separate offense under Montana statute, there was no prejudice to the defendant in the manner in which the five counts were set forth.

The evidence presented by the State on the trial of this case left the jury with no choice but to find as it did. A number of highly qualified livestock brand inspectors testified that the brands had been altered. The evidence presented by the State was overwhelming. The altered brands, the securing of the brand that could be used, and all of the other facts added up to ironclad proof of larceny of the cattle. The jury obviously was not satisfied with the defendant's version of the facts.

Having carefully reviewed the specifications of error we find

182

them to be without merit, and the judgment is accordingly affirmed.

MR. CHIEF JUSTICE JAMES T. HARRISON and MR. JUSTICES ADAIR, DOYLE and JOHN CONWAY HARRISON, concur.