No. 13646

IN THE SUPREME COURT OF THE STATE OF MONTANA

1977

STATE OF MONTANA,

　　　　Plaintiff and Respondent,

-vs-

DONALD CHARVAT,

　　　　Defendant and Appellant.

Appeal from:　District Court of the Tenth Judicial District,
　　　　　　　　Honorable LeRoy L. McKinnon, Judge presiding.

Counsel of Record:

　　For Appellant:

　　Bradley B. Parrish argued, Lewistown, Montana

　　For Respondent:

　　　Hon. Mike Greely, Attorney General, Helena, Montana
　　　William Spoja, County Attorney, Lewistown, Montana
　　　Timothy J. O'Hare argued, Deputy County Attorney,
　　　Lewistown, Montana

Submitted:　December 1, 1977

Decided: JAN 11 1978

Filed:　JAN 11 1978

Thomas J. Kearney
Clerk

Mr. Chief Justice Paul G. Hatfield delivered the Opinion of the Court.

Defendant Donald Charvat appeals from a conviction in the District Court, Fergus County. Judge LeRoy L. McKinnon, sitting without a jury, found defendant guilty of Count I, selling of dangerous drugs, and Count II, possession of dangerous drugs, and imposed a 3 year deferred sentence, together with a fine of $250.

The material facts are not disputed. On the night of October 4, 1975, Deputy Sheriff Sirucek received information from an informant that marijuana plants had been seen growing on the Charvat Ranch. To substantiate this information, Sirucek with the informant, entered the Charvat Ranch and located the plot where the alleged marijuana was growing. The plot was approximately 50' from the abandoned ranch buildings and located within an old corral, visible only by actually going on the ranch property. A field test performed on an alleged marijuana plant from the plot proved positive.

On the following day, October 5, 1975, Sirucek applied for and received a search warrant allowing a search of the Charvat ranch for marijuana plants and other dangerous drugs. Officers Sirucek and Caster, with the search warrant, proceeded to the Charvat ranch. The ranch house was obviously abandoned being in a great state of disrepair, having no windows and incapable of being lived in. Finding no one in the area, the officers proceeded to search. Lying near the plot where the marijuana was discovered on the previous night, the officers discovered a sheet of plywood covered with freshly picked marijuana plants. Nearby a pile of similar plywood sheets was discovered with freshly picked marijuana plants sandwiched in between the sheets. These alleged marijuana plants were the only plants seized and introduced as evidence at defendant's

trial. Defendant moved to suppress this evidence on the ground that such evidence was illegally seized pursuant to an illegal search and seizure. This motion was denied. Defendant was found guilty as charged and judgment was entered. Defendant appeals from this judgment.

Two issues are raised for review by this Court.

(1) Whether the marijuana introduced at defendant's trial was seized from an area constitutionally protected from unreasonable search and seizure?

(2) Whether the affidavit in support of the search warrant contained sufficient probable cause to issue the warrant?

The determinative issue of this appeal is whether the marijuana plants were discovered in an area constitutionally protected from unreasonable searches and seizure. The Fourth Amendment to the United States Constitution and Article II, Section 11, 1972 Montana Constitution, guarantees the right of the people to be secure in their " * * * persons, papers, homes, and effects * * *" from unreasonable searchs and seizure. This does not, however, protect "open fields". Hester v. United States, 265 U.S. 57, 68 L.Ed 898, 900, 44 S.Ct. 445 (1924). In Hester the United States Supreme Court held that while the revenue agents were on Hester's father's land without a warrant and without his consent, and even if there had been a trespass, the testimony of the revenue agents was not obtained by an illegal search and seizure.

> " * * * The only shadow of a ground for bring-
> ing up the case is drawn from the hypothesis
> that the examination of the vessels took place
> upon Hester's father's land. As to that, it is
> enough to say that, apart from the justification,
> the special protection accorded the 4th Amend-
> ment to the people in their 'persons, houses,
> papers, and effects' is not extended to open
> fields. * * *"

See also: G.M. Leasing Corp. v. United States, ____U.S.____, 50 L Ed 2d 530, 543, 97 S.Ct.____ (1977); United States v. Santana,

- 2 -

4Z U.S. 38, 49 L Ed 2d 300, 305, 96 S.Ct. 2406 (1976); Air Pollution Variance Bd. v. Western Alfalfa, 416 U.S. 861, 40 L Ed 2d 607, 611, 94 S.Ct. 2114 (1974).

Montana concurs in the Hester decision and has repeatedly adhered to the "open fields" doctrine. State v. Johnson (1967), 149 Mont. 173, 179, 424 P.2d 728; State v. Perkins (1969), 153 Mont. 361, 366, 457 P.2d 465; State v. Arnold (1929), 84 Mont. 348 358, 275 P. 757; State v. Ladue (1925), 73 Mont. 535, 538, 237 P. 495. In each of these cases this Court cited the "open fields" doctrine enunciated in Hester and held that evidence obtained from an open field, farmland, or a corral may be used as direct evidence in a prosecution. Such areas are not embraced within the constitutional guarantee against unreasonable searches and seizure.

The "open fields" doctrine was recently reiterated by the United States Supreme Court in Air Pollution Variance Board v. Western Alfalfa, supra. In that case, the Court cited Hester and applied the "open fields" doctrine to the situation where a state health inspector entered defendant's outdoor premises without its knowledge or consent, and without a warrant to make an opacity test of smoke being emitted. The Court at 611 stated:

> "He had sighted what anyone in the city who was near the plant could see in the sky--plumes of smoke. The Court in Hester v. United States, 265 U.S. 57, 59, 68 L.Ed 898, 44 S.Ct. 445, speaking through Mr. Justice Holmes refused to extend the Fourth Amendment to sights seen in "the open fields." The field inspector was on respondent's property but we are not advised that he was on premises from which the public was excluded."

In addition to the United States Supreme Court's reiteration of the "open fields" doctrine further evidence and explanation of the doctrine is found in recent federal cases. In U.S. v. Freie, 545 F.2d 1217 (9th Cir. 1976), cert.den. 52 L Ed 2d 356 (1977), the court reviewed whether property near a small

isolated airstrip, leased for private use and enclosed by a cattle fence, was a protected area, thus requiring suppression of boxes containing marijuana seized there without a warrant or consent. The court stated at p. 1223:

> "In Hester v. United States, 265 U.S. 57, 44 S.Ct. 445, 68 L.Ed. 898 (1924), the court held that the protection provided by the Fourth Amendment to the people to be free from unreasonable searches and seizures in their "persons, houses, papers and effects" is not extended to open fields. In Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L Ed 2d 576 (1967), the court held that the Fourth Amendment protects people, not 'places.' Ever since that decision, the determination of whether an intrusion is an unreasonable search has depended on one's actual subjective expectation of privacy and whether that expectation is objectively reasonable. See Katz, supra, at 361, 88 S.Ct. 507 (Harlan, J., concurring). Thus, the proper focus is no longer on common law property concepts. See Wattenburg v. United States, 388 F.2d 853, 857 (9 Cir. 1968). It now appears that Hester no longer has any independent meaning but merely indicates that open fields are not areas in which one traditionally might reasonably expect privacy. United States v. Magana, 512 F.2d 1169, 1170 (9 Cir. 1975); Patler v. Slayton, 503 F.2d 472, 478 (4 Cir. 1974).

> " * * *

> "Hence, while it is possible that appellants had actual subjective expectations of privacy, those expectations were not objectively reasonable and the motions to suppress were properly denied."

This same conclusion is given support by the United States Supreme Court in Santana where the court stated:

> "While it may be true that under the common law of property the threshold of one's dwelling is 'private,' as is the yard surrounding the house, it is nonetheless clear that under the cases interpreting the Fourth Amendment Santana was in a 'public' place. She was not in an area where she had any expectation of privacy. 'What a person knowingly exposes to the public, even in his own house or office, is not a subject of Fourth Amendment protection.' Katz v. United States, 389 U.S. 347, 351, 19 L Ed 2d 576, 88 S.Ct. 507 (1967). She was not merely visible to the public but was as exposed to public view, speech, hearing, and touch as if she had been standing completely outside her house. Hester v. United States, 265 U.S. 57, 59, 68 L.Ed. 898, 44 S.Ct. 445 (1924)." 49 L Ed 2d 305

- 4 -

After examining the present case, it is hard to imagine that defendant had any subjective expectations of privacy as to the numerous marijuana plants left on the plywood sheets out in the open. It is undisputed that the ranch house was abandoned and had been so for a long time. The ranch house lacked windows and was in a great state of disrepair. Defendant resided in Denton, Montana, in a trailer and his father, Vic Charvat, resided in Jordan, Montana. There were no locked gates on the property. The land was not posted with "no trespassing" signs. The access to the ranch was open to anyone.

Hence, while it is possible that defendant had actual subjective expectations of privacy, those expectations were not objectively reasonable. The marijuana plants were not in an area where any expectation of privacy exists and thus not a subject of the Fourth Amendment protection. Resultantly, a search warrant was not required in this case.

Given our resolution of the first issue, we find no need to discuss the second issue heretofore noted.

The order of the District Court denying defendant's motion to suppress the evidence is affirmed. The judgment of conviction by the District Court is affirmed.

_____
Chief Justice

We concur:

_____

_____

_____

_____
Justices

- 5 -