No. 83-67

IN THE SUPREME COURT OF THE STATE OF MONTANA

1983

STATE OF MONTANA,

Plaintiff and Respondent

vs.

LARRY BENNETT,

Defendant and Appellant

Appeal from:  District Court of the Thirteenth Judicial District
In and For the County of Yellowstone
Honorable Diane G. Barz, Judge presiding.

Counsel of Record:

For Appellant:

Towe, Ball, Enright & Mackey, Billings, Montana
Gregory R. Todd, Argued

For Respondent:

Honorable Mike Greely, Attorney General, Helena,Montana
Harold F. Hanser, Argued, County Attorney, Billings, Montana

Submitted:  May 31, 1983

Decided:  July 14, 1983

Filed:

*Ethel M. Harrison*

Clerk

Mr. Justice John C. Sheehy delivered the Opinion of the Court.

Defendant, Larry Bennett, appeals an order of the District Court of the Thirteenth Judicial District denying his motion to suppress dated October 28, 1982, and the district court's order finding Bennett guilty of criminal possession of dangerous drugs.

On August 5, 1982, Deputy Sheriff George Jensen received any anonymous tip that Bennett was growing marijuana in his garden. At 6:00 a.m. on August 6, 1982, Jensen drove to Bennett's house. From a county road adjacent to Bennett's property, Jensen put a 60 power scope on the top of his truck and spotted marijuana plants growing in Bennett's garden.

Bennett owned 19.7 acres of property. Bennett's house, garage and garden were adjacent to the county road and bounded by a barbed wire fence. The fence extended 175 feet from north to south and 228 feet from east to west. No evidence was presented to indicate the distance from the garden to the buildings. The area surrounding the fenced portion of Bennett's property was open fields.

Jensen testified that he was standing on the county road about 60 meters from the marijuana when he used the spotting scope. While he could not identify the substance as marijuana without the scope, he could see the garden from the county road with his naked eye and determined that, ". . . they did observe to have some qualities of what a marijuana plant may look like. But I couldn't say for certain if they were or not."

Thereafter, Jensen applied for and received a search warrant. On the afternoon of August 6, Jensen and two other detectives went to Bennett's home to conduct the search. No

one answered the doors. One of the detectives heard a noise and investigated the house. From a basement window in Bennett's house they saw what they believed to be marijuana growing in a pot in the basement. A second warrant was obtained permitting a search of the basement. When the search was executed the officers seized about 600 grams of marijuana from both locations. In August of 1982, Bennett was charged with criminal possession of dangerous drugs, section 45-9-102, MCA. Pursuant to section 46-13-302, MCA, he moved for suppression of all evidence seized in connection with the charge. The District Court denied Bennett's motion. After a nonjury trial, the District Court found him guilty of criminal possession of dangerous drugs and ordered a two-year suspended sentence. Bennett appeals the order denying his motion to suppress and the district court's order finding him guilty of the charged crime. We affirm both orders of the District Court.

The issue presented for review in this case is whether the use of a spotting scope to identify marijuana growing in Bennett's garden violates his reasonable expectation of privacy.

The State concedes that should the first warrant be struck, the subsequent warrant would be invalid. Should the first warrant be sufficient, the evidence seized pursuant to that warrant is sufficient to sustain the felony conviction without examination of the second warrant. Therefore, we need only address the sufficiency of the first warrant.

Bennett asserts the State violated the Fourth Amendment of the United States Constitution and Article II, Section 11, of the Montana Constitution which mandates that law enforcement have probable cause to search.

We have held that a warrantless search is per se unreasonable, unless it falls within one of the defined exceptions to the warrant requirement. State v. Hyem (1981), _____ Mont. _____, 630 P.2d 202, 205, 38 St.Rep. 891, 893.

However, when the State does not violate an individual's legitimate expectation of privacy, an unreasonable search has not taken place. United States v. Knotts (1983), _____ U.S. _____, 103 S.Ct. 1081, 75 L.Ed.2d 55; State v. Charvat (1978), 175 Mont. 267, 269, 573 P.2d 660, 661-2.

In 1967 the United States Supreme Court determined that application of the Fourth Amendment depends on whether the person invoking its protection can claim that government activities "violated the privacy upon which he justifiably relied." Katz v. United States (1967), 389 U.S. 347, 353, 88 S.Ct. 507, 19 L.Ed.2d 576.

In Smith v. Maryland (1979), 442 U.S. 735, 99 S.Ct. 2577, 61 L.Ed.2d 220, the United States Supreme Court further explained these principles:

> "Consistently with Katz, this Court uniformly has held that the application of the Fourth Amendment depends on whether the person invoking its protection can claim a 'justifiable,' a 'reasonable,' or a 'legitimate expectation of privacy' that has been invaded by government action. [Citations omitted.] This inquiry, as Justice Harlan aptly noted in his Katz concurrence, normally embraces two discrete questions. The first is whether the individual, by his conduct, has 'exhibited an actual (subjective) expectation of privacy,' 389 U.S. at 361--whether, in the words of the Katz majority, the individual has shown that 'he seeks to preserve [something] as private.' Id., at 351. The second question is whether the individual's subjective expectation of privacy is 'one that society is prepared to recognize as 'reasonable,' Id., at 361--whether, in the words of the Katz majority, the individual's expectation, viewed objectively, is 'justifiable' under the circumstances. [Citations omitted.]" Smith, 442 U.S. at 740-741 (footnote omitted).

- 4 -

This Court has affirmed this analysis. State v. Hyem (1981), ____ Mont. ____, 630 P.2d 202, 38 St.Rep. 891.

Courts have consistently held that there is no legitimate expectation of privacy in "open fields." In Hester v. United States (1924), 265 U.S. 57, 44 S.Ct. 445, 68 L.Ed. 898, the United States Supreme Court held that the special protection accorded by the Fourth Amendment to the people in their "persons, houses, papers and effects" is not extended to open fields stating that the distinction between an open field and a house is as old as common law.

This Court has had several occasions to recognize this doctrine. State v. Perkins (1969), 153 Mont. 361, 366, 457, P.2d 465; State v. Johnson (1967), 149 Mont. 173, 179, 424, P.2d 728; State v. Arnold (1929), 84 Mont. 348, 358, 275 P. 757; State v. Ladue (1925), 73 Mont. 535, 539, 237 P. 495.

In Perkins we stated: "In our view the District Court was correct. There was no search, the calves were in a corral in open sight. A corral can be likened to an open field. . . Thus evidence obtained from viewing a corral may be used as direct evidence in a prosecution. [Citations omitted]." Perkins, 153 Mont. at 366, 457 P.2d at 467-468.

We have further held that: ". . . evidence obtained from an open field, farmland, or a corral may be used as direct evidence in a prosecution." Charvat, 175 Mont. at 269, 573 P.2d at 661.

Where no reasonable expectation of privacy exists, there is neither a "search" nor a "seizure" within the contemplation of the Fourth Amendment of the United States Constitution or Article II, Section 11 of the Montana Constitution. Id. at 269.

Similarly, in the present case, the marijuana was in an open field. Therefore, there was no search and the evidence obtained was properly used as direct evidence in this prosecution.

In a recent case the United States Supreme Court held that a beeper device, planted in a container of chloroform, used to track the activities of the defendant, did not invade any legitimate expectation of privacy and thus there was neither a "search" nor a "seizure" within the contemplation of the Fourth Amendment. Knotts, 103 S.Ct. at 1087.

The Court determined:

> "Nothing in the Fourth Amendment prohibited the police from augmenting the sensory faculties bestowed upon them at birth with such enhancement as science and technology afforded them in this case. . . Insofar as respondent's complaint appears to be simply that scientific devices such as the beeper enabled the police to be more effective in detecting crime, it simply has no constitutional foundation. We have never equated police efficiency with unconstitutionality and we decline to do so now." Knotts, 103 S.Ct. at 1086.

In Knotts, the container of chloroform was placed in an automobile and eventually used to manufacture a controlled substance. The detectives tracked the automobile to defendant's cabin where the drugs were being manufactured. The United States Supreme Court determined that the use of the beeper, even when the automobile was out of sight, was legitimate. Similarly, the use of the scope to detect marijuana that may have been difficult to see from the county road was not improper.

The use of binoculars and other visual enhancement devices has been determined to be legitimate:

> ". . . the police may observe people or places aided through use of a variety of tools which materially enhance or assist the senses, without first having to secure a search warrant . . .

'Binoculars. . . contribute to surveillance without violation of the Fourth Amendment in the usual case.'" United States v. Dubrofsky (9th Cir. 1978), 581 F.2d 208, 211. United States v. Allen (9th Cir. 1980), 675 F.2d 1373, 1380.

In United States v. Lee (1927), 274 U.S. 559, 47 S.Ct. 746, 71 L.Ed. 1202, the United States Supreme Court stated:

"But no search on the high seas is shown. The testimony of the boatswain shows that he used a searchlight. It is not shown that there was any exploration below decks or under hatches. For aught that appears, the cases of liquor were on deck and, like the defendants, were discovered before the motor boat was boarded. Such use of a searchlight is comparable to the use of a marine glass or a field glass. It is not prohibited by the Constitution." 274 U.S. at 563.

Bennett voluntarily exposed the marijuana to public viewing by growing it in a garden near a county road open to scrutiny.

Bennett argues that he had a subjective expectation of privacy because he placed corn in an L-shape tract around the marijuana and because the marijuana could only be seen with the aided eye.

We find no merit to this contention. Bennett may or may not have had a subjective expectation of privacy, but we are not convinced that his subjective expectation of privacy is one that society is prepared to recognize as reasonable.

The corn did not obstruct Jensen's view of the marijuana; the plants were stationary and open to public viewing anytime of the day or night; his garden was surrounded by open fields; Bennett had merely strung a barbed wire fence around the area and Jensen was able to view the marijuana from a county road. The plants wre not in an area where an expectation of privacy exists. Therefore, a search warrant was not required in this case.

We affirm the conviction of Larry Bennett.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____

_____
Justices

- 8 -