*367 JUSTICE LEAPHART
delivered the Opinion of the Court.
The State of Montana appeals from an order of the Nineteenth Judicial District Court, Lincoln County, suppressing evidence in a criminal case against Steven Richard Stubbs (Stubbs). We reverse.
BACKGROUND
The facts are essentially undisputed. Late on the night of July 3, 1993, Lincoln County Reserve Deputy Steven Boyer (Boyer) was patrolling east of Libby when he observed a car rapidly approaching him from behind. Boyer testified that he was traveling 45 miles per hour in an area with a 45 mile per hour speed limit when the car passed him. Boyer also observed the car weaving across the center line and fog line.
He attempted to pull the car over by activating his overhead lights, but the driver of the car would not pull over. Eventually, Boyer flashed his high beams, activated his siren, air horn, and spot light in attempts to get the car to pull over. Boyer testified that the car did not start to slow down until Boyer accelerated and pulled out alongside it. The car then turned off the highway onto a county road and stopped approximately 100 feet up the road. Boyer testified that the car travelled about three or four miles from the time he activated his overhead lights until the car finally stopped.
Boyer informed the dispatcher that he was pulling over a person possibly driving under the influence. After stopping, Boyer approached the car on foot. As he approached, Boyer noticed the driver fumbling around and looking towards the passenger seat. Boyer shined his flashlight into the vehicle where he could see that Stubbs, the driver, was the lone occupant. Boyer also saw handguns on the passenger side, several rounds of ammunition on the dash, and an empty pistol holster.
Boyer ordered Stubbs out of the car at gunpoint and handcuffed him. He then did a pat down search of Stubbs and retrieved several rounds of ammunition from his pants pocket and a small brass pipe from his coat pocket which Boyer seized as drug paraphernalia. Boyer testified that after handcuffing Stubbs and having him turn around, he smelled alcohol on Stubbs’ breath, Stubbs’ speech was slurred, his eyes were bloodshot, and he was having trouble standing erect. Boyer did not have Stubbs perform any field sobriety tests. Boyer arrested Stubbs for driving under the influence of alcohol or drugs and for possession of drug paraphernalia. After Stubbs was placed in custody, *368 officers discovered a plastic bag containing marijuana which was not discovered at the roadside. Stubbs later submitted to a blood test to determine the amount of intoxicants in his system.
Stubbs was charged with the following misdemeanors: possession of dangerous drugs for the possession of .05 grams of marijuana, possession of drug paraphernalia, and driving under the influence. On January 28, 1994, Stubbs was convicted on all charges after a bench trial in the Justice Court of Lincoln County. Stubbs appealed his conviction to the District Court for a trial de novo. Prior to his trial in District Court, Stubbs moved to suppress all the physical evidence Boyer seized, and all evidence procured after Boyer arrested Stubbs.
On May 12,1994, the court conducted a hearing on Stubbs’ motion to suppress. On May 17, 1994, the court issued its order suppressing evidence. The court concluded that the seizure of the brass pipe was unauthorized and that the pipe had some influence on Boyer’s determination that Stubbs was driving under the influence. Accordingly, the court suppressed all evidence seized prior to, or as a result of Stubbs’ arrest. The State appeals from this order.
The sole issue raised on appeal is whether the District Court erred in suppressing evidence gathered against Stubbs.
STANDARD OF REVIEW
We review a district court’s ruling on a motion to suppress to determine whether there is substantial credible evidence to support the court’s findings of fact, and whether the court correctly applied the findings as a matter of law. State v. Rushton (1994), 264 Mont. 248, 254, 870 P.2d 1355, 1359. We have also stated that in reviewing a district court’s ruling on a motion to suppress, we determine whether the court’s interpretation and application of the law is correct. State v. Pastos (1994), [269 Mont. 43], 887 P.2d 199, 201; citing State v. McCarthy (1993), 258 Mont. 51, 55, 852 P.2d 111, 113.
DISCUSSION

Stop and Frisk

At the suppression hearing, both parties and the District Court analyzed this case as a “stop and frisk” case. On appeal, the parties continue to argue this case as a stop and frisk case. Therefore, we first discuss stop and frisk searches and seizures.
We note at the outset that warrantless searches are considered per se unreasonable under the Fourth Amendment to the United *369 States Constitution. McCarthy, 852 P.2d at 113; citing Katz v. United States (1967), 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576. However, both federal and state law recognize certain exceptions to the warrant requirement. McCarthy, 852 P.2d at 113; citing California v. Acevedo (1991), 500 U.S. 565, 111 S.Ct. 1982, 114 L.Ed.2d 619; and State v. Evjen (1988), 234 Mont. 516, 756 P.2d 708.
One recognized exception to the warrant requirement is the stop and frisk. Terry v. Ohio (1968), 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889. AMontana statute authorizes the use of a stop and frisk, and this Court has recognized stop and frisk searches as an exception to the warrant requirement. Section 46-5-402, MCA; State v. Gopher (1981), 193 Mont. 189, 192, 631 P.2d 293, 295; State v. Kills On Top (1990), 243 Mont. 56, 83, 793 P.2d 1273, 1291.
An officer may conduct a stop and frisk without having probable cause to arrest the suspect. Generally, the stop and frisk is performed in the interests of crime detection and in the interests of protecting the investigating officer. Terry, 392 U.S. at 22-23,88 S.Ct. at 1880-81. The United States Supreme Court has stated that “in determining whether the [stop and frisk] seizure and search were ‘unreasonable’ our inquiry is a dual one — whether the officer’s action was justified at its inception, and whether it was reasonably related in scope to the circumstances which justified the interference in the first place.” Terry, 392 U.S. at 19-20, 88 S.Ct. at 1879.
The United States Supreme Court has had occasion to apply the Terry “stop and frisk” rationale to vehicle stops. In Michigan v. Long (1983), 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201, the Court addressed a situation not unlike that in the present case. The hour was late and area rural. Long was driving his automobile at excessive speed, and his car swerved into a ditch. The officers had to repeat their questions to Long, who appeared to be under the influence of some intoxicant. The officers did not frisk Long until they noticed that there was a large knife in the interior of the car into which Long was about to reenter. Their subsequent search of the car was restricted to those areas to which Long would generally have immediate control, and that could contain a weapon. Citing Pennsylvania v. Mimms (1977), 434 U.S. 106, 98 S.Ct. 330, 54 L.Ed.2d 331, the Court noted that “investigative detentions involving suspects in vehicles are especially fraught with danger to police officers.” Long, 463 U.S. at 1047, 103 S.Ct. at 3480. The Court went on to state:
Our past cases indicate then that protection of police and others can justify protective searches when police have a reasonable belief *370 that the suspect poses a danger, that roadside encounters between police and suspects are especially hazardous, and that danger may arise from the possible presence of weapons in the area surrounding a suspect.
Long, 463 U.S. at 1049, 103 S.Ct. at 3480-81. The Court in Long held that, in order to protect themselves, the officers were entitled to conduct a Terry search of the area surrounding a suspect as well as the person of the suspect.
The concerns expressed by the United States Supreme Court in Long are particularly relevant in a situation such as this where the suspect was weaving and speeding down a rural highway late at night; where he refused to stop for a distance of some four miles and where he had numerous firearms within his immediate reach.
This Court has established that for a vehicle stop and frisk to be valid at its inception, the State must satisfy two criteria: 1) the officer had objective data from which an experienced officer can make certain inferences, and 2) the officer had a resulting suspicion that the occupant of a certain vehicle was or had been engaged in wrongdoing or was a witness to criminal activity. Gopher, 631 P.2d at 296.
Stubbs concedes that Boyer was justified in conducting a stop and frisk search but contends that Boyer went beyond the permissible scope of the search. In particular, Stubbs argues that Boyer’s search was prompted by the fact that he saw an empty holster on Stubbs’ passenger seat. Stubbs argues that although the pipe, which was about two and one-half inches long and three-quarters of an inch wide, could have been mistaken for a derringer or another dangerous weapon, it was much too small to have been mistaken for the large pistol missing from the empty holster. In its order granting Stubbs’ motion to suppress, the District Court agreed with Stubbs’ argument. After concluding that the empty holster gave rise to Boyer’s concerns, the District Court stated that “if [Boyer] had asked, ‘Where is the gun for that holster?’, [Stubbs] would have pointed it out to him on the passenger seat of the car and there would have been no need for a search.” However, we believe that the District Court’s analysis is much too narrow in light of the facts of this case.
Boyer stopped Stubbs after observing him speeding and weaving over the center line and the fog line. Stubbs only stopped after Boyer had activated numerous lights, siren, and air horn. Stubbs then pulled off on a rural county road. When Boyer approached Stubbs’ car, he noticed Stubbs fumbling around on the passenger side of the car. When Boyer looked inside Stubbs’ car, he observed several *371 weapons, ammunition, and an empty holster on the passenger side of the car. In this situation, we think it unrealistic to limit the officer’s search to a weapon of a specified size or type.
Boyer testified that when he frisked Stubbs, he was looking for weapons. When asked whether he was looking for any particular kind of weapon, he responded, “Not anything in particular, no.” Boyer testified that when he felt the lump in Stubbs’ jacket pocket, he thought it could have been a knife or a derringer. As we have noted, one purpose of a stop and frisk is to protect the officer from deadly weapons. It would not make sense for an officer attempting to protect himself or herself to ignore a possible weapon simply because it does not feel large enough to fit an empty holster seen in the suspect’s car. Ignoring the potential weapon would have been especially absurd in the present case where Boyer had seen more than one weapon in Stubbs’ car along with numerous rounds of ammunition.
We next consider whether contraband may be seized when it is discovered during a stop and frisk in which an officer is searching for weapons. Stubbs argues that the seizure of the pipe went beyond the scope of a search for a particular weapon. In support of his argument, he cites to Minnesota v. Dickerson (1993),_U.S._, 113 S.Ct. 2130, 124 L.Ed.2d 334. Dickerson involved a pat down search in which the officer felt a small plastic bag through the suspect’s clothes. After squeezing and manipulating the object, the officer determined that it probably contained drugs. The officer seized the bag, which contained cocaine. The Dickerson Court stated:
The question presented today is whether police officers may seize nonthreatening contraband detected during a protective patdown search of the sort permitted by Terry. We think the answer is clearly that they may, so long as the officer’s search stays within the bounds marked by Terry.
Dickerson, 113 S.Ct. at 2136. The Supreme Court recognized that contraband which is discovered through “plain touch” is subject to seizure the same as that discovered through “plain view.” Thus, if a police officer is lawfully engaging in a Terry stop and frisk and pats down a suspect’s clothing and feels an object whose contour or mass makes its identity “immediately apparent,” there has been no invasion of the suspect’s privacy beyond that already authorized by the officer’s search for weapons. Dickerson, 113 S.Ct. at 2137.
The Dickerson Court held that the officer did not stay within the bounds of a Terry search because the officer made no claim that he suspected the object to be a weapon, and he was not immediately able *372 to discern that the material in the plastic bag was drugs without manipulating the contents of the bag. Dickerson, 113 S.Ct. at 2138. The Court stated that:
Although the officer was lawfully in a position to feel the lump in respondent’s pocket, because Terry entitled him to place his hands upon respondent’s jacket, the court below determined that the incriminating character of the object was not immediately apparent to him. Rather, the officer determined that the item was contraband only after conducting a further search, one not authorized by Terry or by any other exception to the warrant requirement. Because this further search of respondent’s pocket was constitutionally invalid, the seizure of the cocaine that followed is likewise unconstitutional.
Dickerson, 113 S.Ct. at 2139.
The situation in the present case is clearly distinguishable. Boyer testified that he thought the lump in Stubbs’ pocket could have been a deadly weapon such as a knife or derringer. Therefore, he removed the item to make certain that it was not a deadly weapon, not because he suspected that it was contraband. We hold that this was within the bounds of a proper stop and frisk.
Once the brass pipe was removed, it was in Boyer’s plain view. We recently stated that a valid plain view seizure requires 1) that the officer have a prior justification for the intrusion, and 2) that the officer inadvertently discover a piece of evidence. State v. Williams (1994), [268 Mont. 428], 887 P.2d 1171, 1174; citing Coolidge v. New Hampshire (1971), 403 U.S. 443, 466, 91 S.Ct. 2022, 2038, 29 L.Ed.2d 564, 583. An additional element not listed in Williams is that the incriminating character of the item seized must be apparent. State v. Hembd (1989), 235 Mont. 361, 369, 767 P.2d 864, 869.
We have already determined that Boyer was justified in performing the pat down search and removing the pipe from Stubbs’jacket pocket. Boyer testified without contradiction that he was searching for weapons on Stubbs’ person, and there is no indication that the search was used as a pretext to discover illicit drugs or paraphernalia. This is supported by the fact that Boyer did not seize a plastic bag of marijuana which was later seized during a custodial search. Thus, we conclude that Boyer inadvertently discovered the pipe. Finally, the U.S. Supreme Court has examined how apparent the incriminating nature of the seized item must be. See Texas v. Brown (1983), 460 U.S. 730, 103 S.Ct. 1535, 75 L.Ed.2d 502. In upholding the seizure of an opaque balloon containing illegal drugs, the Brown Court rejected *373 the argument that for the incriminating nature of a seized item to be apparent, the officer must have a near certainty that the item is illicit. Brown, 460 U.S. at 741, 103 S.Ct. at 1542-43. The Court held that it was sufficient that the officer had probable cause to believe that the balloon in plain view held illicit drugs. Brown, 460 U.S. at 743, 103 S.Ct. at 1543-44. We hold that Boyer, like the officer in Brown, had probable cause to conclude that the brass pipe was drug paraphernalia as defined in § 45-10-101(1)(k), MCA.
We hold that the District Court erred in concluding that Boyer exceeded the scope of a stop and frisk search when he removed the brass pipe, and that the plain view doctrine justified Boyer’s seizure of the pipe.

Search Incident to an Arrest

Stubbs advances an alternative argument under which he contends that we must affirm the District Court’s suppression of the evidence. Stubbs argues, as he did in the District Court, that Boyer actually placed him under arrest before the search. He argues that the “arrest” was made without probable cause, and therefore, all subsequent fruits of the searches conducted after the flawed arrest must be suppressed. The State argues that Stubbs did not file a cross-appeal, and therefore this Court cannot address the issue. The record discloses that the alternative basis for suppression was argued at the District Court but was not addressed by that court due to its erroneous reliance on the stop and frisk rationale. However, we have held that we will affirm a district court’s decision, if correct, regardless of the district court’s reasoning in reaching its decision. Hagan v. State (1994), 265 Mont. 31, 35, 873 P.2d 1385, 1387 (citations omitted). In Hagan, we upheld the district court’s decision in favor of the State on a different basis than that used by the district court, despite the fact that the State had not cross-appealed. Hagan, 873 P.2d at 1387. Here, if Stubbs were improperly arrested, then the evidence seized subsequent to the arrest is the fruit of an illegal arrest, and the District Court’s order suppressing the evidence would be correct. Thus, we will address Stubbs’ alternative argument concerning search incident to an arrest.
Stubbs argues that when Boyer pointed his weapon at Stubbs and placed handcuffs on him, that Stubbs was under arrest. Stubbs argues that, at that time, Boyer did not have probable cause to arrest him for driving under the influence, possession of drug paraphernalia, or possession of dangerous drugs.
*374 We note that several courts have held that pointing a weapon at a suspect and placing him in handcuffs, while increasing the intrusiveness of a Terry-type search, does not necessarily amount to an arrest requiring probable cause. See U.S. v. Perdue (10th Cir. 1993), 8 F.3d 1455, 1463; U.S. v. Smith (7th Cir. 1993), 3 F.3d 1088, 1094; U.S. v. Crittendon (4th Cir. 1989), 883 F.2d 326, 329; U.S. v. Taylor (9th Cir. 1983), 716 F.2d 701, 709; State v. Lovato (N.M. App. 1991), 817 P.2d 251, 256; State v. Clevidence (Ariz. App. 1987), 736 P.2d 379, 383.
However, none of these cases interpreted an arrest statute similar to our own. Section 46-6-104(1), MCA, states: “An arrest is made by an actual restraint of the person to be arrested or by the person’s submission to the custody of the person making the arrest.” We agree with Stubbs’ position that by placing Stubbs in handcuffs at gunpoint, Boyer actually restrained Stubbs and arrested him. However, we disagree with Stubbs’ contention that the arrest was improper.
Section 46-6-311(1), MCA, provides:
[a] peace officer may arrest a person when a warrant has not been issued if the officer has probable cause to believe that the person is committing an offense or that the person has committed an offense and existing circumstances require immediate arrest.
Boyer had more than a reasonable suspicion of criminal activity when he pulled Stubbs’ car over and proceeded to search. Boyer had probable cause to arrest Stubbs for speeding, reckless or careless driving (§§ 61-8-301(l)(a) and 61-8-302, MCA), and for eluding a peace officer (§ 61-8-301(l)(b), MCA). Given the facts that Boyer observed Stubbs speeding, driving recklessly and eluding an officer, and had seen numerous weapons in Stubbs’ vehicle, Boyer had probable cause to arrest Stubbs and had a reasonable justification for searching him on the scene.
Finally, an officer conducting a search incident to a valid arrest may search the arrestee to protect the officer from attack. Section 46-5-102(1), MCA. A search to protect the officer from attack necessarily includes a search for weapons. Thus, our reasoning upholding a stop and frisk search and seizure is also applicable in upholding the search incident to arrest.
For the foregoing reasons, we reverse the order of the District Court suppressing the evidence and remand for trial.
*375 CHIEF JUSTICE TURNAGE, JUSTICES GRAY, NELSON and WEBER concur.