JUSTICE TRIEWEILER
delivered the Opinion of the Court.
Scott Scheetz was charged in the District Court for the Thirteenth Judicial District in Yellowstone County with criminal possession of dangerous drugs with intent to sell after a drug-detecting canine led officers to search his airline luggage, in which they discovered eighteen pounds of marijuana. He filed a motion to suppress the seized evidence. The District Court denied his motion. Scheetz pled guilty and now appeals the District Court’s denial of his motion to suppress. We affirm the order and judgment of the District Court.
The sole issue on appeal is whether the use of a drug-detecting canine to sniff luggage which has been entrusted to an airline constitutes a search in violation of a person’s right to privacy guaranteed by Article II, Sections 10 and 11, of the Montana Constitution.
FACTUAL BACKGROUND
On February 9, 1995, Officer Lawrence Leighton of the Tucson Airport Authority Police Department noticed Scott Scheetz and two other men acting nervously prior to checking in for their flight. The individuals became cautious when they were walking toward the check-in counter and noticed the uniformed Leighton. Rather than proceed directly to the counter where no one else was waiting in line and where they could have checked in immediately, they became “quite serious” and retreated to some nearby couches. They talked among themselves and “continued to appear nervous.” Two of the individuals walked away and left Leighton’s view for a minute or two, while the third remained at the couch with a large, new, hard-sided suitcase. All of the men avoided eye contact with Leighton throughout his observations of them.
Fifteen minutes prior to their flight’s departure, the three men checked in at the counter and checked the suitcase. Leighton, who had been with the Airport Authority Police for five years and investigated approximately two hundred narcotics cases, and who had *44 received advanced officer training in narcotics recognition, suspected that the three men were trafficking narcotics. He inspected the luggage in the baggage area immediately after the men checked it. He found that the luggage tag listed only the name of John Olson and a telephone number. Leighton also investigated the men’s travel plans and found that they had been made through a travel agent very shortly before the flight, and that the men had been in Tucson for approximately two days.
Based on his experience and the men’s behavior, Leighton contacted the Billings Police Department and informed them of his suspicion that the men were trafficking narcotics. He provided descriptions of the men, their flight number, and their time of arrival in Billings. The men, while traveling, were going by the names of John Olson, Chris Anderson, and Bob Jones. When Detective Steve Cwalinski of the Billings Police traced the phone number on the luggage tag, he found that it was for a Billings restaurant.
Officer Cwalinski, accompanied by a drug-detecting canine and its handler and a DEA agent, met the flight when it landed at the Billings airport. Before the luggage was loaded onto the carousel, the canine was directed to sniff the luggage from the flight. The canine’s reaction indicated that the suitcase matching the description given by Leighton contained drugs.
Cwalinski identified two men matching the description given by Leighton as they waited near the carousel for their luggage. One of the two men took the suitcase that had been identified by the canine and Leighton when it came off the carousel. He removed the tags and threw them in the trash. Cwalinski retrieved the discarded tags, which listed John Olson and the phone number, approached the men, and identified himself as an officer. He advised them of his investigation and escorted them to an office in the airport.
After separating the men, the officers advised Scheetz of his Miranda[1] rights. Scheetz, who had removed the suitcase from the carousel, identified himself as John Olson, and initially refused to give his consent to search his suitcase, although he eventually admitted that he had drugs in the suitcase, and was placed under arrest. The officers obtained a search warrant for the suitcase and found that it contained approximately eighteen pounds of marijuana.
On March 1, 1995, the Yellowstone County Attorney filed an information charging Scheetz with criminal possession of dangerous *45 drugs with intent to sell and criminal possession of drug paraphernalia. On August 8, 1995, Scheetz filed a motion to suppress the evidence against him, based upon what he asserted was the State’s invasion of his privacy by the use of a drug-detecting canine. After briefing and a hearing, the District Court concluded that the use of a drug-detecting canine was not a search and, accordingly, denied the motion. On March 6, 1996, Scheetz pled guilty to the charges, but reserved his right to appeal the denial of his motion to suppress. The District Court accepted the plea and sentenced Scheetz to ten years of imprisonment, with five years suspended.
DISCUSSION
Does the use of a drug-detecting canine to sniff luggage which has been entrusted to an airline constitute a search in violation of a person’s right to privacy guaranteed by Article II, Sections 10 and 11, of the Montana Constitution?
We review a district court’s denial of a motion to suppress to determine whether the court’s interpretation and application of the law is correct. See State v. Graham (1995), 271 Mont. 510, 512, 898 P.2d 1206, 1207-08; State v. Stubbs (1995), 270 Mont. 364, 368, 892 P.2d 547, 550.
The use of drug-detecting canines to inspect luggage is an issue of first impression in Montana. Although search and seizure protections are traditionally founded on the Fourth Amendment of the United States Constitution, we stated in State v. Sawyer (1977), 174 Mont. 512, 515, 571 P.2d 1131, 1133, that “[w]e need not consider the Fourth Amendment issue because we view the Montana Constitution to afford an individual greater protection ... than is found under the Fourth Amendment.” We also explained in State v. Siegal (1997), 281 Mont. 250, 934 P.2d 176, 184, that when a right of privacy is specially implicated as part of a traditional search and seizure analysis, we must address the issue pursuant to both Sections 10 and 11 of Article II of the Montana Constitution. Article II, Section 10, states: “The right of individual privacy is essential to the well-being of a free society and shall not be infringed without the showing of a compelling state interest.” Article II, Section 11, states:
The people shall be secure in their persons, papers, homes and effects from unreasonable searches and seizures. No warrant to search any place, or seize any person or thing shall issue without describing the place to be searched or the person or thing to be *46 seized, or without probable cause, supported by oath or affirmation reduced to writing.
A threshold question in the determination of whether an unlawful search has occurred is whether there has been government intrusion into an area where privacy is reasonably expected. The U.S. Supreme Court stated in United States v. Jacobsen (1984), 466 U.S. 109, 113, 104 S.Ct. 1652, 1656, 80 L.Ed.2d 85, 94, that “[a] ‘search’ occurs when an expectation of privacy that society is prepared to consider reasonable is infringed.” We stated in State v. Loh (1995), 275 Mont. 460, 914 P.2d 592, that “[a] search compromises the individual interest in privacy.” Loh, 275 Mont. at 468, 914 P.2d at 597 (quoting Horton v. California (1990), 496 U.S. 128, 133, 110 S.Ct. 2301, 2306, 110 L.Ed.2d 112, 120). “Where no reasonable expectation of privacy exists, there is neither a ‘search’ nor a ‘seizure’ within the contemplation of the Fourth Amendment of the United States Constitution or Article II, Section 11 of the Montana Constitution.” State v. Bennett (1983), 205 Mont. 117, 121, 666 P.2d 747, 749.
In United States v. Place (1983), 462 U.S. 696, 103 S.Ct. 2637, 77 L.Ed.2d 110, the U.S. Supreme Court held that exposing a person’s luggage, which is located in a public place, to a drug-detecting canine is not a search within the meaning of the Fourth Amendment. Place involved facts similar to these. An airport officer relied on his suspicions of drug trafficking to alert officers in the passenger’s destination city to conduct a canine investigation of the passenger’s luggage. The Supreme Court reasoned that the investigation was “much less intrusive than a typical search,” and that “the information obtained is limited.” Place, 462 U.S. at 707, 103 S.Ct. at 2644, 77 L.Ed.2d at 121.
States are free to grant citizens greater protection based on state constitutional provisions than the U.S. Supreme Court divines from the U.S. Constitution. See City of Mesquite v. Aladdin’s Castle, Inc. (1983), 455 U.S. 283, 293, 102 S.Ct. 1070, 1077, 71 L.Ed.2d 152, 162; Sawyer, 174 Mont. at 515, 571 P.2d at 1133. Nonetheless, most states that have addressed the use of drug-detecting canines have followed Place and have held that the use of drug-detecting canines does not constitute a search. See State v. Weinstein (Ariz. Ct. App. 1997), 947 P.2d 880; Vega v. State (Ark. Ct. App. 1997), 939 S.W.2d 322; State v. Snitkin (Haw. 1984), 681 P.2d 980; State v. Martinez (Idaho Ct. App. 1996), 925 P.2d 1125; State v. Barker (Kan. 1993), 850 P.2d 885; State v. Washington (La. Ct. App. 1997), 687 So. 2d 575; Gadson v. State (Md. 1995), 668 A.2d 22, cert. denied (1996), 116 S. Ct. 1704, 134 L. Ed. 2d 803; State v. Morrison (Neb. 1993), 500 N.W.2d 547; Gama v. *47 State (Nev. 1996), 920 P.2d 1010; State v. Kesler (N.D. 1986), 396 N.W.2d 729; Scott v. State (Okla. Crim. App. 1996), 927 P.2d 1066; State v. Knight (Ohio Com. Pl. 1997), 679 N.E.2d 758. But see Pooley v. State (Alaska. Ct. App. 1985), 705 P.2d 1293; People v. May (Colo. 1994), 886 P.2d 280; State v. Torres (Conn. 1994), 645 A.2d 529; State v. Gifford (Me. 1992), 604 A.2d 45; State v. Pellicci (N.H. 1990), 580 A.2d 710; People v. Dunn (N.Y. 1990), 564 N.E.2d 1054, cert. denied (1991), 501 U.S. 1219, 111 S. Ct. 2830, 115 L. Ed. 2d 1000; State v. Juarez-Godinez (Or. 1997), 942 P.2d 772; Commonwealth v. Cass (Pa. Super. Ct. 1995), 666 A.2d 313.
Montana, however, recognizes broader protections for an individual’s right of privacy pursuant to Article II, Section 10, of Montana’s Constitution, than the United States Supreme Court does pursuant to the Fourth Amendment of the United States Constitution, and other states typically do pursuant to their state constitutions. See Sawyer, 174 Mont. at 516, 571 P.2d at 1133. As we apply the Montana Constitution, we have chosen not to “march lock-step” with the United States Supreme Court, even when applying nearly identical language. State v. Johnson (1986), 221 Mont. 503, 512, 719 P.2d 1248, 1254. Thus, Place is not determinative of whether the government’s use of a drug-detecting canine violates the Montana Constitution.
To determine whether the use of a drug-detecting canine constitutes a search in light of Montana’s right to privacy, we look first to two recent decisions in which we have protected the right of privacy from state intrusion.
First, in State v. Bullock (1995), 272 Mont. 361, 901 P.2d 61, we recognized that a person may have a reasonable expectation of privacy in land that extends beyond the curtilage of his residence. In Bullock, the defendant had posted “No Trespassing” signs, moved his cabin far away from the public road to a point where it was hardly visible, and gated access to his property. The precautions he took to protect his property from intrusion were a sufficient basis for this Court’s recognition of his right to privacy beyond the curtilage of his residence and potentially into what other states or the United States Supreme Court might classify as open fields. See United States v. Dunn (1987), 480 U.S. 294, 107 S.Ct. 1134, 94 L.Ed.2d 326. Accordingly, we held that entry by the state onto the private property constituted a search and required a warrant or the owner’s consent.
Next, in State v. Siegal (1997), 281 Mont. 250, 934 P.2d 176, we held that the state’s use of a thermal imaging device to “view” *48 conditions inside a building on private property constituted a search in violation of the defendant’s right to privacy, even though most other states have held otherwise. See Siegal, 281 Mont. 250, 934 P.2d at 185-92 (discussing at length the cases and their reasoning). In Siegal, we relied on substantial legislative history from the 1972 Montana Constitutional Convention to conclude that “thermal imaging ... is the very sort of technology against which Article II, Section 10, of Montana’s Constitution, was enacted to guard.” Siegal, 281 Mont. 250, 934 P.2d at 192. Accordingly, we held that its use constitutes a search and requires the demonstration of a compelling state interest.
To determine what constitutes a search pursuant to Article II, Section 11, of the Montana Constitution, we have considered, in Bullock, Siegal, and other cases involving search and seizure, two separate factors: (1) the extent of the privacy expectation; and (2) the nature of the state’s intrusion. Here, Scheetz contends that the canine sniff of his luggage, after he had already surrendered it to the airline, constituted an offensive intrusion into his privacy sufficient to be a search triggering constitutional safeguards. We disagree.
Our first consideration is whether Scheetz had a legitimate expectation of privacy that society is willing to recognize as objectively reasonable. That expectation exists and can be determined independent of and prior to any intrusion by either the public or the state. In other words, we recognize that naturally a person seeks to protect certain parts of his or her privacy, and it is those desires which are at the foundation for the constitutional safeguards that exist to protect them. See generally State v. Solis (1984), 214 Mont. 310, 693 P.2d 518.
This Court’s recognition of a legitimate expectation of privacy has been based on various factors, such as the place of the investigation and the control exercised by the person over the property investigated. Those factors are not present in this case.
In Bullock and Siegal, we validated the long-standing notion throughout this country, but especially in Montana, that a person’s residence and his homestead are secure from unwarranted government intrusion, be it by physical or technological means. See also State v. Rushton (1994), 264 Mont. 248, 870 P.2d 1355; City of Billings v. Whalen (1990), 242 Mont. 293, 790 P.2d 471; State v. Olson (1979), 180 Mont. 151, 589 P.2d 663. See generally United States v. Karo (1984), 468 U.S. 705, 714-15, 104 S. Ct. 3296, 3302-03, 82 L. Ed. 2d 530, 541 (“[a]t the risk of belaboring the obvious, private residences are places in which the individual normally expects privacy free of *49 governmental intrusion not authorized by a warrant, and that expectation is plainly one that society is prepared to recognize as justifiable”); Gryczan v. State (1997), [283 Mont. 433], 942 P.2d 112 (denying the state’s attempt to regulate the private sexual practices of consenting adults). In fact, of the courts that have distinguished Place and held canine sniffs to be searches, many have done so on the basis that the canine sniff occurred at a person’s home.[2] See United States v. Thomas (2d. Cir. 1985), 757 F.2d 1359; Dunn, 564 N.E.2d 1054.
However, even in Montana, when a person leaves the privacy of his home and exposes himself and his effects to the public and its independent powers of perception, it is clear that he cannot expect to preserve the same degree of privacy for himself or his affairs as he could expect at home. “What a person knowingly exposes to the public is not protected, but what an individual seeks to preserve as private, even in an area accessible to the public, may be constitutionally protected.” Bullock, 272 Mont. at 375, 901 P.2d at 70 (citing Katz v. United States (1967), 389 U.S. 347, 351, 88 S. Ct. 507, 511, 19 L. Ed. 2d 576, 582). We also stated in State v. Dess (1982), 201 Mont. 456, 464, 655 P.2d 149, 153, that “[t]he reasonableness of [the defendant’s] expectation of privacy turned on the defendant’s right to exclude others from the premises.”
Here, the luggage that a person brings to the airport is generally subject to observation by the public or the state to the extent that other significant steps have not been taken to preserve the privacy of it and its contents. For example, a person cannot expect to conceal completely from the public the odor of the luggage or its contents, its color, or even its weight since it must be handled by others. Accordingly, we conclude that a person lacks a reasonable expectation of privacy in the smell of luggage that he or she brings to an airport in the same way that he or she lacks an expectation of privacy in the color or weight of the luggage. See generally People v. Mayberry (Cal. 1982), 644 P.2d 810, 814 (declaring a lack of privacy in both the escaping smell of contraband from luggage and the visibly leaking fluid from a container); People v. Bramma (N.Y. Dist. Ct. 1997), 655 N.Y.S.2d 280, 282 (“[t]he Court is not aware of any case holding that *50 there is a reasonable expectation of privacy to the odors emanating from one’s person or in the air surrounding one’s possessions”); Brown v. Commonwealth (Va. Ct. App. 1992), 421 S.E.2d 877, 880 (“[a] reasonable expectation of privacy did not extend to the airspace surrounding appellant’s vehicle”).
Therefore, while a person maintains a privacy interest in the contents of his checked luggage, we conclude that by checking the luggage, he manifests less of an expectation of privacy than if he was to maintain its control and possession by not checking it. Accordingly, we conclude that a person does not maintain a sufficient expectation of privacy in luggage entrusted to an airline that the Montana Constitution prohibits inspection of that luggage by a dog trained to detect the presence of drugs by sniffing the luggage.
A second consideration is the nature of the state’s intrusion. The Delegates to the Montana Constitutional Convention recognized that “the state must come into our private lives at some point.” However, they established an explicit right of privacy to create a “semipermeable wall” between the state and the individual, such that the state should not intrude upon the individual in the form of a search unless it has a very good reason for doing so. Montana Constitutional Convention, Verbatim Transcript March 7, 1972, page 1681. Therefore, we also consider whether the state’s method of investigation is so personally invasive that we recognize the intrusion as a search that requires further justification, such as a warrant or other special circumstances. See State v. Stubbs (1995), 270 Mont. 364, 892 P.2d 547; State v. Ulrich (1980), 187 Mont. 347, 609 P.2d 1218.
The use of a drug-detecting canine to investigate a person’s luggage presents a less substantial threat of revealing unnecessary aspects of an individual’s private affairs than does the state’s intrusion into a person’s gated private property or their privacy via a thermal imaging device. As we pointed out inSiegal, “thermal imagers provide information about heat emissions both legal and illegal while canine sniffs only provide information about the presence of illicit substances.” Siegal, 281 Mont. 250, 934 P.2d at 187. Similarly, in Bullock, the state’s invasion was over-broad: when officers ignored posted warnings, entered the defendant’s private property, and peered unrestricted into areas of the defendant’s homestead which would otherwise have been obstructed from public view, the state forcefully acquired the power to scrutinize all areas of the defendant’s homestead, thus frustrating not only his right, but also his ability to preserve privacy in the area around his home. In contrast, a drug-de *51 tecting canine allows the state very limited and discriminating observation of a person’s private affairs. A canine sniff might reveal to the state the presence of contraband in a person’s luggage, but it divulges nothing else about the contents of the luggage, and it permits a person to maintain as private everything except the contraband.
In'addition to the fact that the use of a drug-detecting canine to inspect checked airline luggage reveals limited information about the defendant’s private affairs, the method of the state’s intrusion is inoffensive. A canine sniff can be conducted without delaying a traveler and without opening a person’s luggage, whereas another form of investigation might subject the owner of the property to significant embarrassment and inconvenience. The fact that a traveler has already surrendered possession of his checked luggage also means that he has not been subjected to a seizure of his property. Accordingly, we conclude that the use of a drug-detecting canine to inspect checked airline luggage does not offensively intrude upon or invade a person’s privacy so as to constitute a search.
We conclude that the state’s use of a drug-detecting canine to inspect checked airline luggage does not violate a person’s right to privacy, pursuant to Article II, Section 10, of the Montana Constitution, and that it is neither a search nor a seizure pursuant to Article II, Section 11, of the Montana Constitution. Therefore, we conclude that the District Court properly dismissed Scheetz’s motion to suppress, and we affirm the judgment of the District Court.
CHIEF JUSTICE TURNAGE, JUSTICES NELSON, GRAY, HUNT and REGNIER concur.

. Miranda v. Arizona (1966) 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694.

. Almost all other courts that have recognized a canine sniff as a search have done so in the context of an automobile search, where, unlike here, the defendant maintained control of the searched vehicle. See Torres, 645 A.2d 529; Pellicci, 580 A.2d 710; Dunn, 563 N.Y.S.2d 388, 564 N.E.2d 1054; State v. Juarez-Godinez (1995), 135 Or.App. 591, 900 P.2d 1044. But see, e.g., Weinstein, _ Ariz. _, 947 P.2d 880; Vega, 939 S.W.2d 322; Martinez, 129 Idaho 426, 925 P.2d 1125; Washington, 687 So.2d 575.