Chief Justice Mike McGrath delivered the Opinion of the Court.
***281 ¶1 Jeremiah James Stevens (Stevens) appeals from the Nineteenth Judicial District Court's denial of his motion to suppress. We affirm.
¶2 We restate the issues on appeal as follows:
*906 1. Whether the District Court erred in its determination that the officers' initial investigation was supported by particularized suspicion.
2. Whether the immediate use of handcuffs amounted to an unconstitutional arrest unsupported by probable cause.
3. Whether the District Court erred in its determination that the arrest was supported by probable cause.
FACTUAL AND PROCEDURAL BACKGROUND
¶3 On June 26, 2016, at approximately six a.m., Deputy Sheriff Brandon Holzer (Deputy Holzer) was preparing to transfer a prisoner from the courthouse in Libby, Montana, to a separate facility. Deputy Holzer was outside of the prisoner transport bay door at the north end of the courthouse, when he noticed a person hiding in the bushes across the street from the courthouse. According to Deputy Holzer, the person hiding in the bushes, later identified as Stevens, was "bobbing up and down." Concerned by Stevens' behavior, Deputy Holzer delayed the prisoner transport and called for backup.
¶4 Trooper Trewick arrived to assist Deputy Holzer. The officers approached Stevens on foot with their weapons drawn at their sides. Deputy Holzer ordered Stevens to stand up and show his hands-Stevens cooperated. Deputy Holzer then asked Stevens to turn around, Stevens complied, and Deputy Holzer placed Stevens in handcuffs. Deputy Holzer testified that Stevens appeared "very nervous."
¶5 Deputy Holzer asked Stevens what he was doing in the bushes, to which Stevens responded that he had an open container of alcohol and was attempting to conceal it from Deputy Holzer. Deputy Holzer asked ***282 Stevens if he had any weapons on him. Stevens answered that he did not have any weapons, but he was in possession of methamphetamine. Deputy Holzer proceeded to search Stevens and found a container of a white powdery substance, a Fentanyl patch, and a clear plastic container holding a white crystal rock. A field test of the powder and the rock revealed the presence of methamphetamine. Deputy Holzer then placed Stevens under arrest for criminal possession of dangerous drugs.
¶6 Stevens was charged by information with one count of criminal possession of dangerous drugs, a felony, in violation § 45-9-102(4), MCA (2015), and one count of criminal possession of dangerous drugs, a felony, in violation § 45-9-102(6), MCA (2015). Stevens filed a motion to suppress his statements and the drugs on the basis that he was initially detained without reasonable suspicion and arrested without probable cause in violation of the United States and Montana Constitutions. Following an evidentiary hearing, the District Court denied the motion to suppress. Stevens entered into a plea agreement with the State, in which he agreed to plead guilty to one count of criminal possession of dangerous drugs and the State agreed to dismiss the other count. On February 27, 2017, Stevens pleaded guilty to one count of criminal possession of dangerous drugs, in violation of § 45-9-102(6), MCA (2015). On April 10, 2017, Stevens was committed to the Department of Corrections for five years, with two years suspended. Stevens appeals the District Court's denial of his motion to suppress.
STANDARD OF REVIEW
¶7 In reviewing a district court's ruling on a motion to suppress evidence or statements, we determine whether the court's underlying factual findings are clearly erroneous and whether the court correctly interpreted and applied the governing law. State v. Morrisey , 2009 MT 201, ¶ 14, 351 Mont. 144, 214 P.3d 708. A trial court's findings are clearly erroneous if not supported by substantial evidence, if the court has misapprehended the effect of the evidence, or if this Court's review of the record leaves us with the firm conviction that a mistake has been made. State v. Clayton , 2002 MT 67, ¶ 8, 309 Mont. 215, 45 P.3d 30.
DISCUSSION
¶8 The Fourth Amendment of the United States Constitution and Article II, Section 11, of the Montana Constitution similarly prohibit unreasonable searches and seizures.
*907 U.S. Const. amend. IV ("no Warrants" for search or seizure "shall issue, but upon probable cause");
***283 Mont. Const. art. II, § 11 ("No warrant to search any place, or seize any person or thing shall issue ... without probable cause"). The fundamental purpose of the prohibition against unreasonable searches and seizures is to protect the privacy and security of individuals. Clayton , ¶ 11. When the legality of a search or seizure has been called into question, the central inquiry is the reasonableness, in light of all circumstances, of the particular governmental invasion of a citizen's personal security. Clayton , ¶ 12 ; Terry v. Ohio , 392 U.S. 1, 19, 88 S.Ct. 1868, 1878-79, 20 L.Ed.2d 889 (1968).
¶9 1. Whether the District Court erred in its determination that the officers' initial investigation was supported by particularized suspicion.
¶10 Except under certain recognized exceptions, warrantless searches and seizures of persons are per se unreasonable under the Fourth Amendment and Article II, Section 11, of the Montana Constitution. City of Missoula v. Kroschel , 2018 MT 142, ¶ 10, 391 Mont. 457, 419 P.3d 1208 ; Katz v. United States , 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967). A recognized exception to the warrant requirement is the temporary investigative stop, or the Terry stop, established by the United States Supreme Court in Terry v. Ohio and subsequently codified in Montana at §§ 46-5-401 and -403, MCA. Terry, 392 U.S. at 30, 88 S.Ct. at 1885. Section 46-5-401(1), MCA, provides:
In order to obtain or verify an account of the person's presence or conduct or to determine whether to arrest the person, a peace officer may stop any person or vehicle that is observed in circumstances that create a particularized suspicion that the person ... has committed, is committing, or is about to commit an offense.
¶11 Further, an officer who has lawfully stopped a person may request the person's name, address, and an explanation of the person's actions, frisk the person, and take other reasonably necessary steps for protection if the officer has reasonable cause to suspect that the person is armed and presently dangerous to the officer. Section 46-5-401(1), (2)(a)-(b), MCA. A stop authorized by § 46-5-401, MCA, may not last longer than is necessary to effectuate the purpose of the stop. Section 46-5-403, MCA.
¶12 The United States Supreme Court has stated that "in determining whether the [investigatory] seizure and search were 'unreasonable' our inquiry is a dual one-whether the officer's action was justified at its inception, and whether it was reasonably related in scope to the circumstances which justified the interference in the first place." Terry , 392 U.S. at 19-20, 88 S.Ct. at 1879. An officer may only ***284 initiate a Terry stop if he or she has particularized suspicion that wrongdoing exists. Section 46-5-401(1), MCA. Particularized suspicion is objective data from which an experienced police officer can make certain inferences and a resulting suspicion that the individual is or has been engaged in wrongdoing. State v. Wilson , 2018 MT 268, ¶ 28, 393 Mont. 238, 430 P.3d 77. Relevant considerations include the quantity, substance, quality, and degree of reliability of information known to the officer. Wilson , ¶ 28. The question of whether particularized suspicion exists is a "factually driven inquiry dependent on the totality of the circumstances giving rise to the investigative stop." Clayton , ¶ 19. This standard does not require that an officer be certain, or even correct, that a person is engaged in criminal activity. Wilson , ¶ 28. Yet, particularized suspicion requires more than mere generalized suspicion or an undeveloped hunch of criminal activity. Wilson , ¶ 28.
¶13 Unquestionably, Stevens was entitled to the protection of the Fourth Amendment when he was approached by the officers. Katz , 389 U.S. at 351, 88 S.Ct. at 511 ("the Fourth Amendment protects people, not places"). The issues raised by Stevens are whether the officers' initial investigation was supported by particularized suspicion and whether the use of handcuffs elevated the Terry stop into an unconstitutional arrest.
¶14 Stevens argues that his "mere presence" on the street adjacent to the courthouse did not give Deputy Holzer particularized *908 suspicion to initiate a Terry stop. Stevens' argument, however, misconstrues several key facts. Specifically, he minimizes the fact that "bobbing up and down" in the bushes across from a courthouse at six a.m. may be construed as strange, even suspicious, behavior. Further, Deputy Holzer's concern that Stevens might be attempting to interfere with the prisoner transport was reasonable considering Stevens was trying to conceal himself from Deputy Holzer. At the evidentiary hearing, Deputy Holzer testified that he considered the prisoner transport bay door a "high risk area" and that interference with a prisoner transport "is a factor at all times." Stevens argues that it was unreasonable for Deputy Holzer to suspect Stevens of attempting to interfere with the transport considering Deputy Holzer had never personally encountered such an interference. This argument is not compelling. An officer does not have to personally experience a situation before he or she can appreciate the potential risk involved when such a situation presents itself. "[D]ue weight must be given ... to the specific reasonable inferences [an officer] is entitled to draw from the facts in light of his ***285 [or her] experience." Terry , 392 U.S. at 27, 88 S.Ct. at 1883. Deputy Holzer's heightened concerns, in reliance on the totality of the circumstances, surpassed an inarticulate hunch and he was entitled to initiate a Terry stop pursuant to § 46-5-401(1), MCA.
¶15 2. Whether the immediate use of handcuffs amounted to an unconstitutional arrest unsupported by probable cause.
¶16 "Only when [an] officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred." United States v. Mendenhall , 446 U.S. 544, 552, 100 S.Ct. 1870, 1876, 64 L.Ed.2d 497 (1980) (quoting Terry , 392 U.S. at 19, n. 16, 88 S.Ct. at 1879, n. 16 ); Clayton , ¶ 12. This standard has been expanded over time and now includes the inquiry of whether, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave. State v. Roberts , 1999 MT 59, ¶ 16, 293 Mont. 476, 977 P.2d 974 ; Mendenhall , 446 U.S. at 554, 100 S.Ct. at 1877.[1] Here, a seizure occurred when Stevens was placed in handcuffs. There were two officers present, their weapons were drawn at their sides, and Stevens was placed in handcuffs. Mendenhall , 446 U.S. at 554, 100 S.Ct. at 1877. A reasonable person would not have felt free to leave.
¶17 We agree with Stevens that no probable cause existed to make an arrest when he was initially approached by the officers, for at that time the officers had only a particularized suspicion, not a reasonable belief, that a crime had been, or was about to be, committed. However, we also agree with the State that the officers' display of weapons and use of handcuffs did not amount to an arrest.
¶18 "An arrest is made by an actual restraint of the person to be arrested or by the person's submission to the custody of the person making the arrest." Section 46-6-104(1), MCA. In State v. Thornton , 218 Mont. 317, 708 P.2d 273 (1985), this Court adopted a three-part test to determine whether an arrest occurred. The three elements are: (1) authority to arrest; (2) assertion of the authority with intention to effect an arrest; and (3) restraint of the person arrested. Thornton , 218 Mont. at 322-23, 708 P.2d at 277. Here, the parties do not dispute that the first and third elements have been met. However, the State asserts ***286 that the second element cannot be met because Deputy Holzer only intended to effect a Terry stop and not an arrest when he placed Stevens in handcuffs. We agree with the State. Deputy Holzer testified that he placed Stevens in handcuffs before questioning him, "[j]ust for officer safety. Just the fact that he is at [six] a.m. ... hiding in the bushes." Under the circumstances, Stevens' unusual behavior gave the officers reason to suspect that Stevens may *909 pose a threat to their safety. The use of handcuffs provided the officers an opportunity to neutralize any potential threat so they could safely gather more information. Moreover, after handcuffing Stevens, Deputy Holzer asked Stevens why he was hiding in the bushes and whether Stevens was in possession of any weapons. These routine, unobtrusive questions demonstrate that Deputy Holzer's intent was not to arrest Stevens, but instead to conduct an investigatory stop.
¶19 In State v. Stubbs , 270 Mont. 364, 892 P.2d 547 (1995), this Court held that by placing the defendant in handcuffs at gunpoint the officer had executed an arrest, not an investigatory stop, necessitating probable cause.[2] We find Stubbs distinguishable from the case sub judice. Specifically, Stubbs failed to cite both the three-factor test delineated in Thornton and § 46-5-401(2)(b), MCA. Section 46-5-401(2)(b), MCA, explicitly provides that during an investigative stop an officer may, "frisk the person and take other reasonably necessary steps for protection if the officer has reasonable cause to suspect that the person is armed and presently dangerous to the officer or another person present" (emphasis added). The United States Supreme Court has observed that in conducting an investigative stop, a law enforcement officer "should not be denied the opportunity to protect himself from attack by a hostile suspect." Adams v. Williams , 407 U.S. 143, 146, 92 S.Ct. 1921, 1923, 32 L.Ed.2d 612 (1972). Deputy Holzer's use of handcuffs is also consistent with the Court's explanation in Terry :
Certainly it would be unreasonable to require that police officers take unnecessary risks in the performance in their duties.... [W]e cannot blind ourselves to the need for law enforcement officers to protect themselves and other prospective victims of violence in situations where they may lack probable cause for an arrest. When an officer is justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others, it would appear to ***287 be clearly unreasonable to deny the officer the power to take necessary measures to determine whether the person is in fact carrying a weapon and to neutralize the threat of physical harm.
Terry , 392 U.S. at 23-24, 88 S.Ct. at 1881. See also State v. Morsette , 201 Mont. 233, 654 P.2d 503 (1982) (holding that officer was justified in using shotgun during the execution of investigatory stop to ensure officer safety).
¶20 We agree with the State that § 46-5-401(2)(b), MCA, permitted the officers to place Stevens in handcuffs to safely effectuate the investigatory stop. The totality of the circumstances confirms that sufficient objective data was available to Deputy Holzer to draw the inference that Stevens posed a safety threat or planned to disrupt the prisoner transport. Deputy Holzer had the requisite particularized suspicion to execute the initial Terry stop and the use of handcuffs did not elevate the investigatory stop into an arrest.[3]
¶21 3. Whether the District Court erred in its determination that the arrest was supported by probable cause.
¶22 Section 46-6-311(1), MCA, provides: "A peace officer may arrest a person when a warrant has not been issued if the officer has probable cause to believe that the person is committing an offense or that the person has committed an offense and existing circumstances require immediate arrest." Probable cause for an arrest exists when the facts and circumstances within the arresting officer's personal knowledge are sufficient to warrant a reasonable person to believe that the suspect has committed an offense. Hulse v. DOJ, Motor Vehicle Div. , 1998 MT 108, ¶ 13, 289 Mont. 1, 961 P.2d 75. "Probable cause cannot be based on an officer's mere suspicion of criminal activity." State v. Ellington , 2006 MT 219, ¶ 16, 333 Mont. 411, 143 P.3d 119.
¶23 Stevens argues that the arrest was made without probable cause, and therefore, all fruits of the search discovered after *910 the flawed arrest must be suppressed. We disagree. During the investigatory stop, while the officers were questioning Stevens, Stevens spontaneously confessed that he was in possession of methamphetamine. At this point, the officers' particularized suspicion ripened into probable cause to arrest. Deputy Holzer lawfully arrested Stevens and conducted a search incident to arrest pursuant to § 46-5-102, MCA. The admission of the drugs and Stevens' statements into evidence did not violate Stevens' ***288 constitutional rights.
CONCLUSION
¶24 For the aforementioned reasons, the District Court's denial of Stevens' motion to suppress was not erroneous.
¶25 Affirmed.
We Concur:
LAURIE McKINNON, J.
INGRID GUSTAFSON, J.
JAMES JEREMIAH SHEA, J.
JIM RICE, J.

"Examples of circumstances that might indicate a seizure, even where the person did not attempt to leave, would be the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person ... or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." Mendenhall , 446 U.S. at 554, 100 S.Ct. 1870.

Stubbs was overruled on other grounds by State v. Loh , 275 Mont. 460, 914 P.2d 592 (1996).

Had the officers' initial inquiries not ripened into probable cause, their authority to continue the stop would have expired and the officers would have been required to release Stevens.