

DA 19-0670

IN THE SUPREME COURT OF THE STATE OF MONTANA

2021 MT 194N

STATE OF MONTANA,

    Plaintiff and Appellee,

  v.

MATTHEW DOUGLAS WEBB,

    Defendant and Appellant.

FILED

AUG 03 2021

Bowen Greenwood
Clerk of Supreme Court
State of Montana

APPEAL FROM:    District Court of the Fourth Judicial District,
In and For the County of Missoula, Cause No. DC 18-653
Honorable Jason Marks, Presiding Judge

COUNSEL OF RECORD:

    For Appellant:

        Chad Wright, Appellate Defender, Moses Okeyo, Assistant Appellate
Defender, Helena, Montana

    For Appellee:

        Austin Knudsen, Montana Attorney General, Michael P. Dougherty,
Assistant Attorney General, Helena, Montana

        Kirsten H. Pabst, Missoula County Attorney, D. James McCubbin, Deputy
County Attorney, Missoula, Montana

Submitted on Briefs: April 14, 2021

Decided: August 3, 2021

Filed:

Chief Justice Mike McGrath delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 Defendant Matthew Douglas Webb appeals from the Judgment of the Fourth Judicial District Court, Missoula County, following his conviction of Criminal Possession of Dangerous Drugs, a felony, in violation of § 45-9-102(6), MCA (2015). We restate and address the following issue on appeal: Did the District Court err by denying Webb's motion to suppress evidence based on an alleged lack of particularized suspicion of wrongdoing?

¶3 We affirm.

¶4 Shortly before midnight on June 5, 2017, Montana Highway Patrol Trooper Novak observed a vehicle traveling on U.S. Highway 93 well below the posted speed limit. Trooper Novak ran a vehicle registration check and learned the vehicle belonged to a Sherry Louise Kenda-Feller and a Matthew Mitchell. Trooper Novak observed Mr. Mitchell's driver's license photograph matched the appearance of the only occupant of the vehicle. Trooper Novak also observed Mr. Mitchell's driving status returned as suspended.

¶5 Trooper Novak initiated a traffic stop of the vehicle. When he approached the vehicle, Trooper Novak greeted the driver and asked if he was Matthew Mitchell. The

2

driver replied that his name was Matthew Webb; however, he was unable to produce proof of identification or insurance. When explaining how he came to possess the vehicle, Webb first stated he purchased the car from a friend, but then offered to call the "owner" of the vehicle when Trooper Novak requested registration and proof of insurance. Webb declined consent for Trooper Novak to search the vehicle, stating the vehicle was not his.

¶6 When Trooper Novak asked Webb where he lived, Webb provided a mailing address in Great Falls and a residential address in Butte. When Trooper Novak asked Webb where he was traveling that evening, Webb stated he was going to a friend's house in Stevensville but was unable to provide the friend's full name.

¶7 In verifying Webb's identity, Trooper Novak discovered Webb had prior convictions for criminal possession of dangerous drugs, criminal possession of drug paraphernalia, and distribution of dangerous drugs. Trooper Novak cited Webb for driving with a suspended license and failing to carry proof of insurance. Trooper Novak then contacted a canine unit to perform a canine sniff of Webb's vehicle. A canine was deployed to the vehicle and alerted to the presence of illegal drugs. Trooper Novak later obtained and executed a search warrant for Webb's vehicle and located a plastic bag containing nine hypodermic syringes, a black cloth pouch containing four hypodermic syringes, three small plastic bags with a powdery residue, a small plastic bag containing a crystalline substance which later tested positive for methamphetamine, and a spoon wrapped in a melted plastic bag.

¶8 On October 30, 2018, Webb was charged with criminal possession of dangerous drugs. Webb moved to suppress all evidence obtained as a result of the canine sniff of his

vehicle. At the suppression hearing, Trooper Novak testified that during his encounter with Webb, Webb's hurried speech and shaking hands demonstrated "a level of nervousness which was inconsistent with the level" Trooper Novak was "accustomed to seeing with folks committing traffic violations or misdemeanors in that situation." Trooper Novak also testified that in his experience and training, distributors of dangerous drugs do not have a need to carry a wallet because they often travel with others who pay their expenses, which would explain why Webb was traveling a long distance without a wallet containing identification. Trooper Novak stated that during the encounter, Webb indicated a black mustang might pull up next to the stop, confirming Trooper Novak's belief that Webb was traveling with another individual. Trooper Novak further testified that in his experience, drug distributors travel in a team of vehicles, one of which carries the contraband.

¶9 The District Court denied Webb's motion upon determining that particularized suspicion existed to extend the traffic stop and conduct a canine sniff search of the vehicle. Webb later entered into a plea agreement with the State and received a suspended sentence to the Montana Department of Corrections for a two-year commitment. Webb reserved his right to appeal the denial of his motion to suppress.

¶10 We review a district court's ruling on a motion to suppress evidence to determine whether the court's underlying findings of fact are clearly erroneous and whether those findings were applied correctly as a matter of law. *State v. Wilson*, 2018 MT 268, ¶ 21, 393 Mont. 238, 430 P.3d 77. "A finding is clearly erroneous if it is not supported by substantial evidence, if the lower court has misapprehended the effect of the evidence, or

4

if our review of the record leaves us with the firm conviction that a mistake has been made." *Wilson,* ¶ 21.

¶11 The Fourth Amendment to the United States Constitution and Article II, Section 11, of the Montana Constitution protect persons against unreasonable governmental searches and seizures, "including brief investigatory stops such as traffic stops." *Wilson,* ¶ 25. A search or seizure conducted absent a judicial warrant issued on probable cause is considered per se unreasonable. *State v. Hoover,* 2017 MT 236, ¶ 14, 388 Mont. 533, 402 P.3d 1224.

¶12 A law enforcement officer may initiate a traffic stop absent a warrant if the officer has particularized suspicion that criminal activity is afoot. *State v. Stevens,* 2019 MT 36, ¶ 12, 394 Mont. 278, 434 P.3d 904. Particularized suspicion is (1) objective data and articulable facts from which an experienced law enforcement officer can make certain reasonable inferences, and (2) a resulting suspicion that the person to be stopped has committed, is committing, or is about to commit an offense. *City of Missoula v. Metz,* 2019 MT 264, ¶ 19, 397 Mont. 467, 451 P.3d 530; *Stevens,* ¶ 12. Whether particularized suspicion exists is evaluated under a totality of the circumstances, "considering the quantity or content of the information available to the officer and the quality or degree of reliability of that information." *Metz,* ¶ 19.

¶13 While a traffic stop generally must not last longer than necessary to effectuate the purpose of the stop, the stop may be prolonged and the scope of the investigation broadened "if the investigation remains within the limits created by the facts and the suspicions from

which they arose." *Wilson*, ¶ 25. "The justification for a stop may change as officers acquire additional information." *Wilson*, ¶ 25.

¶14 "A canine sniff of a vehicle constitutes a search under Article II, Sections 10 and 11 of the Montana Constitution." *Wilson*, ¶ 26. Because of its "minimally intrusive nature" an officer need only particularized suspicion before conducting a canine sniff. *Wilson*, ¶ 26.

¶15 Trooper Novak observed a vehicle traveling on a highway at night, well below the posted speed limit. Upon running a registration check, Trooper Novak learned the vehicle belonged to an individual whose driving status returned as suspended. From these observations, Trooper Novak developed sufficient particularized suspicion to initiate a stop of the vehicle to investigate further.

¶16 When Trooper Novak made contact with the driver, later identified as Webb, he learned Webb's name did not match that of the registered owner. Webb was unable to produce proof of identification or insurance. Webb gave inconsistent information regarding where he lived and was unable to provide a full explanation for where he was traveling. Webb also gave inconsistent explanations as to how he came to possess the vehicle, first stating he purchased the car from a friend, then offering to call the "owner" of the vehicle when Trooper Novak requested registration and proof of insurance. Webb again stated the vehicle was not his when he declined consent for Trooper Novak to search the vehicle. Webb also exhibited a high level of nervousness throughout the encounter with Trooper Novak, which Trooper Novak testified was inconsistent with innocent motoring. Trooper Novak also verified Webb's identity and learned Webb had prior

6

convictions for possessing dangerous drugs and drug paraphernalia, and distributing dangerous drugs. Considering the totality of these facts and in light of Trooper Novak's experience and training, particularized suspicion existed to perform a canine sniff search of Webb's vehicle.

¶17 We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. In the opinion of the Court, the case presents a question controlled by settled law or by the clear application of applicable standards of review.

¶18 Affirmed.

_____
Chief Justice

We Concur:

_____

_____

_____

_____
Justices

7